UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael YAZZIE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Leslie CHEE, Defendant-Appellant.

Nos. CA 82–1354, CA 82–1355.

United States Court of Appeals,
Ninth Circuit.

No. 82–1354 Argued and Submitted
Nov. 8, 1982.

No. 82–1355 Submitted Nov. 8, 1982.

Decided Nov. 26, 1982.

Certiorari Denied Feb. 22, 1983.
See 103 S.Ct. 1231.

Colin F. Campbell, Asst. Federal Public Defender, Phoenix, Ariz., for defendants-appellants.

Arthur G. Garcia, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before WRIGHT, ANDERSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

▇ Appellants, Navajo Indians, were convicted of incest under the Major Crimes Act, 18 U.S.C. § 1153, which defines certain crimes committed by Indians in Indian country. The Act defines incest by reference to state law.[1] Appellants' crimes were committed on the Arizona portion of the Navajo Reservation. That reservation also extends into New Mexico and Utah. Appellants' acts constituted incest under Arizona law, Ariz.Rev.Stat. §§ 13–3608, 25–101, but would not have constituted incest under New Mexico law, N.Mex.Stat. § 30–10–3. Appellants argue that because they are treated differently from Indians who commit identical acts on the New Mexico portion of the Reservation, their rights to equal protection of the laws are violated.[2] The district court rejected their argument and we affirm.

▇ Appellants do not argue that they are treated differently from any other person, Indian or non-Indian, who commits the same act in the same place. The discrimination of which they complain is geographical, and does not violate the equal protection clause unless it is without a rational basis. *See Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–2387, 69 L.Ed.2d 40 (1981); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 54 n. 110, 93 S.Ct. 1278, 1307, n. 110, 36 L.Ed.2d 16 (1973); *Salsburg v. Maryland,* 346 U.S. 545, 551, 74 S.Ct. 280, 283, 98 L.Ed. 281 (1954).

Appellants contend that the purposes of Congress in enacting the Major Crimes Act

were to "civilize" the Indians, *see Keeble v. United States,* 412 U.S. 205, 211–12, 93 S.Ct. 1993, 1997–1998, 836 L.Ed.2d 844 (1973), and to assure that serious offenses otherwise falling within tribal jurisdiction would be met with appropriate punishment. These purposes cannot rationally differ, according to appellants, for different parts of the Navajo Reservation, especially when considerations of tribal unity are taken into account.

Even though we accept appellants' characterization of the original purposes of the Major Crimes Act, we cannot accede to the conclusion they would have us draw from it. The classification that appellants attack arose from amendments to the Act. Congress' purposes in making those amendments, as well as its purposes in originally passing the Act, must be taken into account in determining whether the classification in question is a rational one.[3]

Congress added the crime of incest to the Major Crimes Act in 1932, 47 Stat. 337, but failed to define incest.[4] Congress remedied that defect in 1966 by providing that incest would be defined and punished as provided by state law. 80 Stat. 1100. Congress again amended the Major Crimes Act in 1976 to provide that certain of the major crimes previously defined by state law should instead be defined and punished according to existing federal law. 90 Stat. 585. The purpose of that amendment was to eliminate the possibility of Indians' being treated differently from non-Indians committing the same crime in the same place. *See United States v. Cleveland,* 503 F.2d 1067 (9th Cir.1974). Incest and burglary were intentionally left out of the 1976 amendments, and continued to be defined and punished according to state law, because there was no possibility that pre-

---

1. Section 1153 provides in part:
   As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

2. Appellants invoke the equal protection component of the fifth amendment due process clause. *See Bolling v. Sharpe,* 347 U.S. 497,

499–500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884 (1954).

3. See *Note, Legislative Purpose, Rationality, and Equal Protection,* 82 Yale L.J. 123 (1972).

4. That omission proved fatal to an incest prosecution in *Acunia v. United States,* 404 F.2d 140 (9th Cir.1968).

scribed punishments for those two crimes could differ for Indians and non-Indians.[5] H.R.Rep. No. 94–1038, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1125, 1129 n. 10.

We conclude that it was rational for Congress to provide that incest under the Major Crimes Act was to be defined and punished as provided by state law, in order to ensure that Indians and non-Indians who commit identical acts in the same location would be subject to identical punishments. It is true that Congress is not required to eliminate all differences in treatment between Indians and non-Indians so long as all persons subject to federal jurisdiction are treated the same. *United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977).[6] It is certainly rational, however, for Congress to elect a statutory scheme in which Indians and non-Indians are subject to the same punishment for the same potentially incestuous acts regardless whether federal or state jurisdiction attaches. It is also rational for Congress to choose to regulate conduct in a manner conforming to standards established by the states. *See United States v. Sharpnack,* 355 U.S. 286, 294, 78 S.Ct. 291, 296, 2 L.Ed.2d 282 (1958).

Because Congress' choice is rational, it meets the requirement of equal protection even though Indians committing the same act on the Arizona portion of the reservation and on the New Mexico portion are treated differently. This situation is by no means unique; similar disparities occur under the General Crimes Act, 18 U.S.C. § 1152, which incorporates the Assimilative Crimes Act, 18 U.S.C. § 13, and under Public Law 280, 18 U.S.C. § 1162, where those laws apply to reservations that cross state lines. *Cf. Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 501–02, 99 S.Ct. 740, 761–762, 58 L.Ed.2d 740 (1979) (jurisdictional disparities within a reservation lying entirely in one state not unconstitutional).

The decisions of the district court are affirmed.

---

**5.** The possibility of discrimination condemned in *United States v. Cleveland, supra,* arose from the fact that non-Indians who committed crimes of rape and aggravated assault against Indians in Indian country were punished under 18 U.S.C. § 1152, which made federal criminal law applicable in Indian country. Since these crimes were defined and punished by existing federal law, federal definitions and punishments applied. Indians committing those same offenses in Indian country were subject to the Major.Crimes Act, which before 1976 referred to state law for definitions and punishment of rape and aggravated assault.

This disparity did not exist in the cases of burglary and incest, because those offenses are not defined by federal law. A non-Indian who commits those crimes against an Indian in Indian country is still subject to 18 U.S.C. § 1152, but in the absence of applicable federal criminal law, that statute renders the Assimilative Crimes Act, 18 U.S.C. § 13, applicable. The Assimilative Crimes Act provides for the application of state law. The result is that non-Indians committing burglary or incest in Indian country are subject to punishments prescribed by state law just as Indians are under the Major Crimes Act.

**6.** The classification of Indians under the Major Crimes Act is a political one arising from "the unique status of Indians as a 'separate people' with their own political institutions." *United States v. Antelope,* 430 U.S. 641, 646, 97 S.Ct. 1395, 1399, 51 L.Ed.2d 701 (1977). It is therefore not an impermissible racial classification. *Id.; see Morton v. Mancari,* 417 U.S. 535, 552, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).