**UNITED STATES of America,**
**Appellant,**

v.

**Patrick A. NORQUAY, Appellee.**

**No. 89–5382.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1989.

Decided June 12, 1990.

Rehearing Denied July 11, 1990.

Rehearing En Banc Denied
July 16, 1990.

---

Lynn A. Zentner, Minneapolis, Minn., for appellant.

Andrew H. Mohring, Minneapolis, Minn., for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The United States appeals from a final order entered in the District Court for the District of Minnesota holding the Federal Sentencing Guidelines inapplicable to a burglary conviction under the Indian Major Crimes Act, 18 U.S.C. § 1153 (1988), and sentencing defendant Patrick A. Norquay under the Minnesota Sentencing Guidelines. For reversal, the government argues that the district court erred in (1) applying the Minnesota Sentencing Guidelines to determine the length of defendant's sentence, (2) applying Minnesota law to compute good time credits, and (3) applying Minnesota law to determine whether defendant's sentence should run concurrently or consecutively with a state sentence he is currently serving. We agree with the government and accordingly vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.

I.

Defendant was charged in a single-count indictment with second degree burglary in violation of the Indian Major Crimes Act, 18 U.S.C. § 1153 (1988) (the Major Crimes Act). The Major Crimes Act makes burglary committed by an Indian within "Indian country" a federal crime.[1] 18 U.S.C. § 1153(a). Because there exists no federal statute describing what conduct constitutes the crime of burglary, the Major Crimes Act incorporates the law of the state in

---

1. 18 U.S.C. § 1153(a) (1988) provides:
   Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under Chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. "Indian country" includes all land within the limits of any Indian reservation under the jurisdiction of the United States government. 18 U.S.C. § 1151 (1988).

which the burglary was committed for purposes of defining the crime and establishing the punishment:

> Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153(b).[2] In Minnesota, the elements of second degree burglary and the maximum penalty are as follows:

> Whoever enters a building without consent and with intent to commit a crime commits burglary in the second degree and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both, if ... when entering or while in the building, the burglar possesses a tool to gain access to money or property.

Minn.Stat.Ann. § 609.582 subd. 2(d) (West 1987). Defendant plead guilty to the charge, admitting that he burglarized the Redby Garage located on the Red Lake Reservation in Minnesota and that he used a tool to gain entry.[3]

Both parties agreed that because the Major Crimes Act makes burglary punishable according to state law, defendant's sentence should not exceed the 10–year maximum sentence in Minn.Stat.Ann. § 609.582 subd. 2. The parties disagreed, however, as to whether defendant should be sentenced pursuant to the Minnesota Sentencing Guidelines or the Federal Sentencing Guidelines.[4] Reserving their right to appeal, the parties stipulated to alternative sentences under state and federal law. The parties agreed to a sentencing range of 24 to 30 months imprisonment under the Federal Guidelines and 37 to 45 months under the Minnesota Guidelines. Under federal law, defendant is entitled to earn good time at a rate of 54 days per year after the first year served. 18 U.S.C. § 3624(b) (1988). Under Minnesota law, defendant is eligible for good time at a rate of one day for every two days served. Minn.Stat.Ann. § 244.04 (West Supp.1990). Whether defendant's federal sentence will run consecutively or concurrently with his state sentence is governed by Federal Guideline § 5G1.3.[5] In Minnesota, multiple sentences are governed by Minn.Stat.Ann. § 609.15 (West 1987) and Minnesota Sentencing Guideline § II.F.

The district court held that the Major Crimes Act requires that defendant be sentenced pursuant to the Minnesota Guidelines and that the Sentencing Reform Act of 1984 (the Sentencing Act) did not expressly or implicitly repeal that mandate. *United States v. Norquay*, 708 F.Supp. 1064, 1066 (D.Minn., 1989). The court sentenced defendant under Minnesota law to 37 months imprisonment to run concurrently with a state sentence he is currently serving, and ordered that good time be calculated according to Minnesota law. The government moved for reconsideration of defendant's sentence. The court denied the government's motion, and the govern-

---

**2.** Until 1986, 18 U.S.C. § 1153 specified that the crime of burglary shall be defined and punished according to state law. *See* 18 U.S.C. § 1153 (1982 & Supp. III 1985). When Congress deleted the specific reference to burglary and replaced this language with the current version of § 1153, it made clear that the change was merely technical and would not affect substance. H.R.Rep. No. 528, 99th Cong., 2d Sess. 7, *reprinted in* 1986 Code Cong. & Admin.News 1298, 1303–04.

**3.** The State of Minnesota has exclusive jurisdiction over "offenses committed by or against Indians" in "Indian country" located within the state *except* offenses committed on the Red Lake Reservation. 18 U.S.C. § 1162(a) (1988).

**4.** The Federal Sentencing Guidelines were established by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 2017 (1984) (codified at 28 U.S.C. §§ 991–998) (the Sentencing Act).

**5.** Federal Guideline § 5G1.3 directs the sentencing court to impose a consecutive sentence if the offense was committed while the defendant was serving a term of imprisonment. U.S.S.G. § 5G1.3. Otherwise the court may impose a concurrent or consecutive sentence and is advised to, whenever possible, impose a sentence that approximates the total punishment that would have been imposed had all the offenses been federal offenses for which sentences were being imposed at the same time. U.S.S.G. § 5G1.3 Commentary; *see* U.S.S.G. § 5G1.2 (multiple counts).

ment filed a notice of appeal pursuant to 18 U.S.C. § 3742(b) (1988). Our review of the sentence imposed by the district court is governed by 18 U.S.C. § 3742(e), which requires us to determine whether the sentence was "imposed in violation of law." 18 U.S.C. § 3742(e)(1) (1988).

## II.

The issue before us is whether the Sentencing Act, and the Federal Sentencing Guidelines established by it, apply to the crime of burglary committed by an Indian on an Indian reservation in violation of the Major Crimes Act. The confusion lies with the language of the two acts. The Major Crimes Act states that burglary shall be "defined and punished" according to state law. 18 U.S.C. § 1153(b). The Sentencing Act states: "Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute ... shall be sentenced in accordance with the provisions of this chapter...." 18 U.S.C. § 3551(a).

When resolving an apparent conflict between two federal statutes, we are mindful of our duty to regard each statute as effective wherever possible, absent a clearly expressed Congressional intent to the contrary. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984) (*Ruckelshaus*). We agree with the district court that the Sentencing Act expresses no clear intent to repeal the incorporation of state law in the Major Crimes Act. *Cf. United States v. Garcia*, 893 F.2d 250, 254 (10th

Cir.1989) (the Sentencing Act does not manifest a clear intent to repeal the incorporation of state law in the Assimilative Crimes Act [6]), *cert. denied,* — U.S. —, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990). The Sentencing Act expressly states that it shall apply "[e]xcept as otherwise specifically provided." 18 U.S.C. § 3551(a). As the Tenth Circuit noted, this provision "authorizes courts to interpret [the Sentencing Act] so as to achieve harmony, to the extent possible, with other statutes." *United States v. Garcia*, 893 F.2d at 254. We are aware that the legislative history of the Sentencing Act refers to "[f]ederal offenders" and "[f]ederal criminal cases," S.Rep. No. 225, 98th Cong., 2d Sess. 39, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3222, and that defendant is a federal offender. *United States v. Long Elk*, 565 F.2d 1032, 1040 (8th Cir.1977) (burglary under the Major Crimes Act remains a federal offense despite incorporation of state law). However, this is not enough to demonstrate an intent on the part of Congress to repeal the Major Crimes Act, especially when Congress' words indicate a contrary intent.[7] *See Ruckelshaus*, 467 U.S. at 1017, 104 S.Ct. at 2879–80 ("repeals by implication are disfavored") (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974)).

However, we part company with the district court's holding that the absence of an intent to revoke the incorporation of state law in the Major Crimes Act means

---

**6.** The Assimilative Crimes Act provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a) (1988). Two district courts have similarly concluded that the Sentencing Act did not repeal the incorporation of state law in the Assimilative Crimes Act, but further held

that federal courts are therefore precluded from applying the Federal Guidelines to convictions under the Act. *United States v. Policastro*, No. 89–244M–3 (E.D.N.C. July 11, 1989) (magistrate's memorandum and order); *United States v. Richards*, No. 88–9005M–01, 1988 WL 123140 (D.Kan. Oct. 21, 1988) (magistrate's memorandum and order).

**7.** The government argues that the "[e]xcept as otherwise specifically provided" language in 18 U.S.C. § 3551(a) refers only to criminal statutes which set mandatory minimum sentences. The government cites no authority for its interpretation, and we find none in the Sentencing Act or its legislative history. We decline therefore to read the language so narrowly.

that federal courts must decline to sentence defendants convicted under the Major Crimes Act according to the Federal Guidelines. We interpret the Major Crimes Act to require only that the sentence imposed for burglary fall within the minimum, if any, and maximum sentence established by state law. *Cf. United States v. Garcia,* 893 F.2d at 254 (adopting the same interpretation of the "like punishment" provision in the Assimilative Crimes Act).[8] Within that range, the sentence should be calculated according to the Federal Sentencing Guidelines.

Our holding gives effect to the Sentencing Act's goal of promoting uniform sentencing within the federal system without undermining the policies embedded in the Major Crimes Act. *See Ruckelshaus,* 467 U.S. at 1018, 104 S.Ct. at 2880–81. Congress enacted the Major Crimes Act because Indian tribes, who had exclusive jurisdiction over crimes committed by Indians on Indian land, were not adequately punishing their people for major offenses such as murder. *Keeble v. United States,* 412 U.S. 205, 209–12, 93 S.Ct. 1993, 1996–98, 36 L.Ed.2d 844 (1973). The overriding goal of Congress was to confer federal jurisdiction over certain offenses Congress deemed the most heinous. *Id.*

In addition, our holding does not defeat Congress' desire that Indians and non-Indians committing the same crime be subject to the same punishment. This desire was clearly expressed in the legislative history of the 1976 amendments to the Major Crimes Act. H.R.Rep. No. 1038, 94th

Cong., 2d Sess. 1, *reprinted in* 1976 U.S. Code Cong. & Admin.News 1125 (hereinafter 1976 USCAAN). While amending the Major Crimes Act to make certain crimes punishable under federal law so that Indians and non-Indians would be treated alike,[9] Congress specifically left burglary and incest committed by an Indian in violation of 18 U.S.C. § 1153 to be defined and punished according to state law. 1976 USCAAN at 1129 n. 10. Congress recognized that because no federal statute defines burglary or incest, non-Indians, who are prosecuted under the Assimilative Crimes Act which also incorporates state law, would also be subject to the offenses and penalties of the state where the crime occurred. *Id.; see United States v. Yazzie,* 693 F.2d 102, 104 n. 5 (9th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1231, 75 L.Ed.2d 464 (1983). Since the 1976 amendments, the Tenth Circuit has held that the Federal Guidelines apply to crimes committed under the Assimilative Crimes Act but that the sentence imposed may not exceed any maximum sentence and may not fall below any mandatory minimum sentence that is required under the law of the state in which the crime occurs. *United States v. Garcia,* 893 F.2d at 251–52. Given Congress' clear desire that Indians and non-Indians be treated alike, we cannot ignore the Tenth Circuit's interpretation of the incorporation of state law in the Assimilative Crimes Act. Our holdings combined mean that Indians convicted under the Major Crimes Act and non-Indians convicted under the Assimilative Crimes Act will both

8. Interestingly, the Tenth Circuit in *United States v. Garcia,* 893 F.2d 250, 252 n. 3 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990), was unable to determine whether the district court based its sentence on the Major Crimes Act or the Assimilative Crimes Act, but concluded that the sentence would be the same under either 18 U.S.C. § 13 (the Assimilative Crimes Act) or 18 U.S.C. § 1153 (the Major Crimes Act).

9. Congress amended the Major Crimes Act to make the crimes of rape and aggravated assault punishable according to federal law. H.R.Rep. No. 1038, 94th Cong., 2d Sess. 3–5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1127–28. Prior to the amendment, the Major Crimes Act allowed these crimes to be punished according

to state law. Because federal law also defined and punished these crimes, non-Indians committing rape or aggravated assault were punished according to federal law under 18 U.S.C. § 1152, while Indians were punished according to state law under 18 U.S.C. § 1153. This disparate treatment was deemed unconstitutional by the Eighth Circuit in *United States v. Big Crow,* 523 F.2d 955 (8th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976), and the Ninth Circuit in *United States v. Cleveland,* 503 F.2d 1067 (9th Cir.1974), thereby prompting Congress to ensure that Indians and non-Indians committing the same offense on the same reservation will be subject to the same punishment.

face sentences under the Federal Sentencing Guidelines.[10]

■ Defendant argues that because his non-Indian accomplice can only be prosecuted in a Minnesota court under Minnesota law, the Minnesota Sentencing Guidelines should apply to defendant as well. Defendant is correct that his non-Indian accomplice is outside the reach of federal jurisdiction because the victim of the burglary was also a non-Indian. *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881) (Congress did not assume jurisdiction over crimes committed within Indian country by non-Indians against other non-Indians in 18 U.S.C. § 1152 and therefore the states have jurisdiction over these offenses) (*McBratney*); *see United States v. Antelope*, 430 U.S. 641, 644 n. 4, 97 S.Ct. 1395, 1397 n. 4, 51 L.Ed.2d 701 (1977). However, we are not persuaded that this potentially disparate treatment precludes application of the Federal Guidelines to defendant. Indians committing offenses that are defined and punished according to federal law against non-Indians have been treated differently than their non-Indian counterparts since the Supreme Court decided that the federal government does not have jurisdiction over offenses committed within Indian country by a non-Indian against a non-Indian. *McBratney*, 104 U.S. at 624. Such disparate treatment was upheld as not violative of equal protection by the Supreme Court in *United States v. Antelope*, 430 U.S. at 647–50, 97 S.Ct. at 1399–01, and has not been of any apparent concern to Congress. *See* 1976 USCAAN at 1126 (recognizing that the

*McBratney* decision does not "appear to be constitutionally based and would not seem to preclude the exercise of Federal jurisdiction" but declining to assume jurisdiction).

### III.

■ We also hold that it was erroneous for the district court to apply Minnesota's law on good time credits and consecutive versus concurrent sentences. This is so regardless of our holding in Part II. The incorporation of state law in the Major Crimes Act does not mean that federal courts must follow "every last nuance of the sentence that would be imposed in state court." *United States v. Garcia*, 893 F.2d at 254 (referring to the incorporation of state law in the Assimilative Crimes Act). The incorporation does not go beyond that state law which establishes the elements of the offense and the range of punishment. *United States v. Sain*, 795 F.2d 888, 890 (10th Cir.1986) (holding that the Assimilative Crimes Act does not adopt Oklahoma law with respect to the right to trial by jury). Before the Sentencing Act eliminated the parole system, several circuits held that federal courts sentencing a defendant under the Assimilative Crimes Act should follow federal law concerning parole eligibility rather than state law. *United States v. Pinto*, 755 F.2d 150 (10th Cir.1985); *United States v. Vaughan*, 682 F.2d 290 (2d Cir.), *cert. denied*, 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982); *United States v. Smith*, 574 F.2d 988 (9th Cir.) (followed by *United States v. Binder*, 769 F.2d 595 (9th Cir.1985)), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156

---

**10.** Indeed our holding may eliminate some disparity that existed prior to the Federal Sentencing Guidelines. Because the Major Crimes Act looks to state law, it is possible that an Indian committing burglary on a reservation that crosses state boundaries will be treated differently from another Indian on the same reservation. Such disparate treatment was held not to be violative of the Constitution by the Ninth Circuit in *United States v. Yazzie*, 693 F.2d 102 (9th Cir.1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1231, 75 L.Ed.2d 464 (1983) (*Yazzie*). In *Yazzie*, Indians who committed incest on the Arizona portion of the Navajo Reservation were convicted under the Major Crimes Act. 693 F.2d at 103. They argued a denial of equal

protection on the grounds that Indians committing identical acts on the New Mexico portion of the reservation would not face criminal charges because their acts would not have constituted incest under New Mexico law. *Id.* The court denied their equal protection challenge. *Id.* at 104. Although perhaps not unconstitutional, such disparate treatment ought to, where possible, be eliminated. Application of the Federal Guidelines to crimes defined by state law would eliminate the possibility of disparate sentences for Indians on a reservation that crosses state boundaries where the states proscribe the same conduct but would impose radically different sentences.

(1978). The policy concerns behind these decisions were expressed by the Ninth Circuit in *United States v. Smith,* 574 F.2d at 992:

> The prisoner is a federal prisoner, and during his [or her] confinement the conditions for his [or her] release on parole should be controlled by federal correctional policies. To hold otherwise would be to have two classes of prisoners serving in the federal prisons: Assimilative Crimes Act prisoners and all other federal prisoners. That situation would be disruptive to correctional administration, and we do not think Congress intended this result.

We are similarly persuaded that application of state law regarding good time credits and consecutive versus concurrent sentencing to a federal offender under the Major Crimes Act would be disruptive to the federal prison system. Therefore we hold that federal law should govern these aspects of defendant's sentence.

### CONCLUSION

In conclusion, we hold that the Federal Sentencing Guidelines are applicable to convictions under the Major Crimes Act where state law defines the elements of the offense and the punishment, but that the sentence imposed shall not exceed the maximum sentence or fall below any minimum sentence provided by state law. We also hold that good time credits for defendants convicted under the Major Crimes Act for crimes defined and punished by state law should be awarded according to federal law and any issue of concurrent versus consecutive sentencing should likewise be resolved according to federal law. Accordingly, the sentence imposed by the district court is vacated, and the case is remanded for resentencing consistent with this opinion.

**JOHN R. GIBSON**, Circuit Judge, dissenting.

I respectfully dissent. While this case presents a close issue, I believe that Congress intended for the sentence of a defendant convicted under the Major Crimes Act to be determined by reference to state sentencing procedures and not by application of the Federal Sentencing Guidelines. Accordingly, I would affirm the district court's order because defendant's sentence was not "imposed in violation of law." 18 U.S.C. § 3742(e)(1).

The court today recognizes, as it must, that unless Congress has clearly expressed an intent to the contrary, courts have a duty to resolve apparent conflicts between federal statutes by regarding each statute as effective wherever possible. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984). The court claims that it has construed both statutes in issue here, the Sentencing Reform Act and the Major Crimes Act, in a manner which furthers the goals of each. I respectfully disagree because I believe that the court's holding is inconsistent with congressional intent.

Congress enacted the Major Crimes Act "to insure equal treatment for Indian and non-Indian offenders who commit certain offenses in Indian country." H.Rep. No. 1038, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1125. This purpose can also be gleaned from the face of the statute itself. "Any Indian who commits ... burglary [in addition to twelve other enumerated offenses] ... shall be subject to the same law and *penalties* as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a) (emphasis added). Those offenses which are listed in the statute but not defined and punished by federal law, such as burglary, "shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense." *Id.* § 1153(b). The court's holding today frustrates this purpose. The facts of the case before us serve to illustrate the basic flaw in the court's approach. Defendant's non-Indian accomplice in the burglary, if prosecuted and convicted, would be sentenced under the Minnesota Sentencing Guidelines because he is beyond the reach of federal jurisdiction. *See United States v. McBratney,* 104 U.S. 621, 624, 26 L.Ed.

869 (1881). Defendant, however, will now be sentenced under the Federal Sentencing Guidelines. While such disparate treatment is not unconstitutional, *see United States v. Antelope*, 430 U.S. 641, 647–50, 97 S.Ct. 1395, 1399–01, 51 L.Ed.2d 701 (1977), it nevertheless runs contrary to the purpose of the Major Crimes Act to treat Indians and non-Indians committing certain offenses in Indian country equally.

The court today claims that its holding promotes uniform treatment because Indians convicted under the Major Crimes Act and non-Indians convicted under the Assimilative Crimes Act, 18 U.S.C. § 13, will both be sentenced under the Federal Sentencing Guidelines. The court presumes that sentences for violators of the Assimilative Crimes Act will be based upon the Federal Sentencing Guidelines and not upon state sentencing procedures. That issue, however, has not been decided by this circuit, and is not before us at this time. I am unwilling to make such a presumption, and I am troubled by the potential for disparate treatment demonstrated by the facts before us.[1]

The crux of this case is interpretation of the Major Crimes Act's mandate that defendant be "punished in accordance with the laws of the State." 18 U.S.C. § 1153(b). The court today contends that this language means that federal law determines the length of the sentence, the computation of good time credits, and the consecutive/concurrent sentence decision. Despite obvious congressional intent to retain state involvement in issues as important as the substantive definition of the enumerated crimes, the court has managed to reduce the states' role in determining punishment to merely establishing minimum and maximum sentences.

The Major Crimes Act itself neither defines "punishment," nor explains the extent to which state law determines punishment. In the absence of express statutory guidance, general principles of statutory construction direct that we look first to the ordinary meaning of the word itself. *United States v. Mayberry*, 774 F.2d 1018, 1020 (10th Cir.1985); *see also id.* at 1020–21 (the word "punishment" has been given a "broad and inclusive meaning" in cases interpreting the Assimilative Crimes Act). Black's Law Dictionary defines "punishment," in part, as "[a]ny fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him." Black's Law Dictionary 1110 (5th ed. 1979). The ordinary meaning of "punishment" must encompass the length of incarceration. Since the Act directs that defendant must be punished in accordance with state law, it follows that the length of incarceration should be determined by referring to state law and the Minnesota Sentencing Guidelines utilized to sentence defendant in this case.

Moreover, I am persuaded that this is the result Congress intended. In 1986, following the passage of the Sentencing Reform

---

1. The court contends that its holding will have the desired effect of eliminating the type of disparity illustrated in *United States v. Yazzie*, 693 F.2d 102 (9th Cir.1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1231, 75 L.Ed.2d 464 (1983), because all Indians convicted of crimes on reservations which cross state boundaries will be sentenced under the Federal Sentencing Guidelines. The disparity in *Yazzie* resulted from the fact that the conduct was a crime under Arizona law but not under New Mexico law, and the Navajo reservation extended into both states. *Yazzie* discussed the purpose and legislative history of the Major Crimes Act. It noted that both incest and burglary were intentionally omitted from the 1976 amendments "and continued to be defined and punished according to state law, because there was no possibility that prescribed punishments for those two crimes could differ for Indians and non-Indians." *Id.* at 103–04. The court declared that it was rational for Congress to elect a statutory scheme in which Indians and non-Indians were subject to the same punishment for the same acts. "It is also rational for Congress to choose to regulate conduct in a manner conforming to standards established by the states." *Id.* at 104. *Yazzie* provides strong authority for applying the Minnesota sentencing procedures in this case. Since Congress reserved to states the authority, under the Major Crimes Act, to determine what type of conduct will be made criminal and how such conduct will be defined, and since the court today concedes that the states can also set maximum and minimum prison terms, it follows naturally that Congress intended that states possess the lesser authority to determine ancillary matters such as the computation of good time credits.

Act, Congress amended the Major Crimes Act and chose to leave intact the critical language before us. The House Report expressly states that burglary is "left to be defined and punished by State law." H.Rep. No. 1038, *supra*, at 5 n. 10, U.S. Code Cong. & Admin.News 1976, p. 1129 n. 10. The federal sentencing provisions state that defendants who have been found guilty of an offense described in any federal statute shall be sentenced under the federal sentencing scheme, *"[e]xcept* as otherwise specifically provided." 18 U.S.C. § 3551(a) (emphasis added). I believe that the Major Crimes Act is an instance where Congress has "otherwise specifically provided," and therefore, it is possible to construe these two federal statutes more harmoniously than the court has done. This construction does not conflict with the Sentencing Reform Act's purpose to promote uniform sentencing within the federal system. Congressional recognition that uniformity is not to be achieved at all costs is demonstrated by the inclusion of the "except" clause quoted above.

Though few courts have considered this issue, I find support for my position in the decisions of two district courts which have considered similar language in the Assimilative Crimes Act. These courts have held that the Federal Sentencing Guidelines cannot be applied to sentence a defendant convicted under the Assimilative Crimes Act.[2] *See United States v. Policastro*, No. 89–244M–3 (E.D.N.C. July 11, 1989) (magistrate's memorandum and order); *United States v. Richards*, No. 88–9005M–01 (D.Kan. Oct. 21, 1988) (magistrate's memo-

randum and order); *see also United States v. Smith*, 574 F.2d 988, 992 (9th Cir.) (holding that federal law determines parole eligibility but that state law determines the length of the prison term), *cert. denied sub nom.* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). This construction of the Assimilative Crimes Act reflects the Act's "enlightened purpose, so far as the punishment of crime [is] concerned, to interfere as little as might be with the authority of the States on that subject." *United States v. Press Publishing Co.*, 219 U.S. 1, 9, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911).

The court places great reliance on *United States v. Garcia*, 893 F.2d 250 (10th Cir.1989), in which the Tenth Circuit questioned whether the action before it was brought under the Major Crimes Act or the Assimilative Crimes Act, but decided to entertain it under the Assimilative Crimes Act. *Id.* at 252 n. 3. While *Garcia* held that the state law would determine the maximum and minimum sentences, the Federal Sentencing Guidelines would determine the sentence within that range. The court emphasized that state law generally only specifies the outer limits of the sentencing range. "Within the permitted range, it is impossible to determine with certainty the sentence that a state judge would impose." *Id.* at 254. In our case, however, Minnesota law goes beyond specifying the outer limits because the statutory scheme also contains sentencing guidelines to determine the sentence within the range. Thus, the *Garcia* court's reasoning that it would be impossible to determine with cer-

---

**2.** Cases concerning the applicability of the federal assessment statute, 18 U.S.C. § 3013, to defendants sentenced under the Assimilative Crimes Act are also instructive. In *United States v. King*, 824 F.2d 313 (4th Cir.1987), the court declined to require a defendant convicted of violating the Assimilative Crimes Act to pay a federal assessment because "[t]he ACA assimilates the entire substantive criminal law of the state, including laws relating to the definition and scope of an offense and *laws governing the manner in which an offense is to be punished.*" *Id.* at 315. The *King* court felt compelled to reach this result because Congress, in the Assimilative Crimes Act, "chose to assure 'complete current conformity with the criminal laws of the respective States in which the enclaves are

situated.'" *Id.* (quoting *United States v. Sharpnack*, 355 U.S. 286, 293, 78 S.Ct. 291, 295–96, 2 L.Ed.2d 282 (1958)); *see also United States v. Mayberry*, 774 F.2d at 1021–22 (holding that imposing a federal assessment on those convicted of assimilative crimes would violate the fundamental policy of the Assimilative Crimes Act). *But see United States v. Dobbins*, 807 F.2d 130, 131 (8th Cir.1986) (per curiam) (holding that a federal assessment did not constitute "punishment" under the Assimilated Crimes Act). Congress amended the federal assessment statute in 1987 to extend its applicability to violations of the Assimilated Crimes Act. No similar legislative enactment has been made to the Major Crimes Act adopting the Federal Sentencing Guidelines.

tainty the sentence imposed under state law has no application here. We know with certainty what punishment would follow from applying Minnesota law. The parties have stipulated to this. Therefore, *Garcia* provides scant support for this court's holding today.

Finally, I believe that Minnesota law should govern the other incidents of incarceration which are implicated by the court's holding. Defendant should be sentenced under Minnesota's law relating ·to application of good time credits and the issue of concurrent versus consecutive sentences. I believe that these issues are so inextricably intertwined with the length of incarceration that they could not possibly be severed if defendant were to be sentenced under the Minnesota Sentencing Guidelines, as I believe he should be. I realize that this result would place an administrative burden on the federal prison system; however, I believe that it is for Congress, not this court, to alleviate that burden.

In conclusion, it is my view that the Major Crimes Act directs a sentencing court to look to state sentencing guidelines, as opposed to federal, to determine length of incarceration and the other issues raised by the case before us. Accordingly, I would affirm the district court.