**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

NATALIE HATCH,

      Defendant-Appellant.

No. 11-1392
(D.C. No. 1:11-CR-00109-PAB-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.[**]

Defendant-Appellant Natalie Hatch pled guilty to committing an assault resulting

in serious bodily injury in Indian Country. A video of the assault was recorded on a cell

phone camera. After watching the video, the district judge concluded that Ms. Hatch had

used her tennis shoes as a dangerous weapon and, as a result, applied a Sentencing

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the parties' briefs and the appellate record, the panel unanimously determined that oral argument would not significantly aid the panel in its decisional process, and ordered the case submitted on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

Guidelines provision that increased Ms. Hatch's sentence. Ms. Hatch appeals that decision, arguing that the district judge misconstrued some of the facts underpinning his conclusion that Ms. Hatch's sneakers were a dangerous weapon in this case. Seeing no error — clear or otherwise — in the challenged factual findings, we **AFFIRM**.

## I. BACKGROUND

### A. *The assault.*

On December 5, 2010, Ms. Hatch and four acquaintances, including Jackie Ware and Darius Wells, consumed alcohol and marijuana together, and Mr. Wells drove the group around in his vehicle. Eventually, Mr. Wells drove into the countryside, and stopped the vehicle so he could relieve himself. Mr. Wells left the vehicle to relieve himself, and when he reentered it, Ms. Ware tried to take over the driving duties, telling Mr. Wells that he was too drunk to drive. Mr. Wells resisted, and began to tussle with Ms. Ware. The fight escalated, and Ms. Hatch joined Ms. Ware by striking at Mr. Wells from inside the vehicle.

Ms. Hatch and Ms. Ware then exited Mr. Well's vehicle, and Ms. Hatch told Ms. Ware to make a video recording on her cell phone. Ms. Ware did so. The video shows Ms. Hatch and another individual (an unnamed juvenile) begin an attack on Mr. Wells, who was extremely intoxicated. Ms. Hatch and the juvenile repeatedly struck Mr. Wells while he was in the driver's seat of his vehicle, and then dragged him out of the car,

2

where Mr. Wells lay on the ground, almost motionless. Ms. Hatch and the other attacker kicked at and stomped on Mr. Wells's head over and over again. At one point during the assault, Ms. Hatch's sneaker came off, and she briefly refrained from attacking Mr. Wells until she put it back on. Once her shoe was back on, Ms. Hatch kicked Mr. Wells in the head one last time. At no point during the assault did Mr. Wells make any effort to fight back against his attackers. He attempted to cover his head with his arms, and as the attack carried on, he slid further and further under his vehicle. As Mr. Wells lay motionless underneath his vehicle, the attack ended.

The assault on Mr. Wells took place in Indian Country. Mr. Wells was loaded into his vehicle and driven to a residential neighborhood, where he was left in his car unattended. Later that night, acting on a tip by a local resident, the police found Mr. Wells and took him to the hospital. At the hospital, "Dr. Lynn Nauman treated [Mr.] Wells and her assessment indicated that [Mr. Wells] sustained broken nasal bones and swelling of the soft tissue in his body." R., Vol. I, at 16 (Plea Agreement and Statement of Facts Relevant to Sentencing, stipulated to by both parties and filed on June 3, 2011). "Thereafter, [Mr.] Wells was medically cleared as the injuries he suffered did not require further treatment or hospitalization." *Id.*

*B. Criminal proceedings against Ms. Hatch.*

The day after the assault, December 6, 2010, Ms. Ware spoke with a Ute Mountain tribal police officer about the attack, and showed him the cell phone video she had recorded. The police investigated, and on March 16, 2011, the government obtained a two-count indictment against Ms. Hatch in the district court. Count One charged Hatch as a principal and aider and abettor for the crime of assault with a dangerous weapon in Indian Country in violation of 18 U.S.C. § 113(a)(3). Count Two charged Hatch as a principal and aider and abettor for the crime of assault resulting in serious bodily injury (apparently, Mr. Wells's broken nose) in Indian County in violation of 18 U.S.C. § 113(a)(6).

On June 3, 2011, Ms. Hatch pled guilty to Count Two (assault resulting in serious bodily injury), and the government dismissed Count One. Ms. Hatch was sentenced on August 19, 2011. The district court applied U.S.S.G. § 2A2.2, which is applicable when a defendant is convicted of an aggravated assault.

*C. Sentencing Guidelines background.*

Before proceeding, we will lay out some background information about the Sentencing Guidelines provisions at issue in this case. Section 2A2.2 of the Guidelines applies when a defendant is convicted of aggravated assault; application of § 2A2.2 results in a base offense level of 14. Under § 2A2.2(b)(2)(B), the defendant's offense

4

level is further enhanced by four levels if the defendant used a "dangerous weapon" during the assault. The first application note for § 2A2.2 tells us that the term "'[d]angerous weapon' has the meaning given that term in § 1B1.1, Application Note 1." U.S.S.G. § 2A2.2, Application Note 1. The same application note also tells us that the meaning of the term dangerous weapon "includes any instrument that is not ordinarily used as a weapon (*e.g.*, a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." *Id.*

*D. The district court's sentencing decision.*

Over Ms. Hatch's objection, the district court applied the four-level enhancement to her base offense level pursuant to § 2A2.2(b)(2)(B). The court ruled that Ms. Hatch's tennis shoes constituted a dangerous weapon in this case. The district judge relied in part on *United States v. Serrata*, 425 F.3d 886, 908-10 (10th Cir. 2005), in deciding to apply the § 2A2.2(b)(2)(B) "dangerous weapon" enhancement.[1] The district judge explained his decision as follows:

> In this particular case, of course, we have a situation where the victim is extremely intoxicated. He is essentially incapable of defending himself. He is able to some degree while he is in the car to put his hands out in a

---

[1] In *Serrata*, we stated, "the court may find that in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, *tennis shoes*, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs." 425 F.3d at 910 (quotations omitted) (emphasis added).

5

feeble attempt to kind of ward off the juvenile who is being directed it appears by Ms. Hatch to get the victim out of [the] car.

And then once he is on the ground, the victim probably more by instinct does have some ability to cover up. He tries to get his arms over his head because that's where most of the kicks . . . and also punches by Ms. Hatch are being directed. And eventually, he is able to roll underneath the SUV and that's what essentially saves him from being beaten some more. But the most important part about the whole thing is that he is essentially defenseless.

* * *

And if we look at the provisions of [U.S.S.G. §§] 2A2.2 and . . . 1B1.1, we see the dangerous weapon not only has a meaning that's given to it in 1B1.1, but it also includes any instrument that is not ordinarily used as a weapon if such instrument is involved in the offense with the intent to commit bodily injury. Certainly that part of the application note is satisfied here because Ms. Hatch is clearly using her shoes with the intent to commit bodily injury.

Not only is it apparent that she is stomping on the victim's head both with the heel and also with the toe of the shoe kicking into his head, and unlike the juvenile who is distributing the kicks to the victim in various parts of the victim's body, including the head but many to the body, Ms. Hatch is almost exclusively kicking the victim or stomping on the victim in the head.

But as I indicated during colloquy, at one point in time Ms. Hatch loses her left shoe. She then stops kicking the victim, [and] takes the time to put her shoe back on. And then once her shoe is back on, she immediately uses her left foot to kick the victim in the head once more. So the shoes are important to her in order to be able to hurt the victim.

And the fact that she is directing her kicks at his head demonstrates her intent. And it's not only an intent to commit bodily injury; this is an intent the Court believes to commit some type of serious bodily injury because, once again, Ms. Hatch is directing virtually all of her kicks and all of her punches to the victim's head, which is, of course, a part of the body that could most likely cause him some type of serious bodily injury.

* * *

> [T]he Court does find that the use of [Ms. Hatch's] shoes, although it's not -- I don't think it's stipulated, but I am assuming her tennis shoes do satisfy the statute, as I said before. She is using both the toe of the . . . shoe, . . . and the heel to stomp and to kick the victim in the head. And under the circumstances here and under the case law, namely *Serrata*, the Court finds that she was using her shoes in a manner that constituted a dangerous weapon.

R., Vol. II, at 44-47 (Tr. of Sentencing Hr'g, Aug. 19, 2011).

In Ms. Hatch's case, application of the § 2A2.2(b)(2)(B) enhancement resulted in a total offense level of 18 and a corresponding Guidelines sentencing range of 27 to 33 months' imprisonment.[2] The district court sentenced Ms. Hatch to 27 months' imprisonment, 36 months' supervised release, and a $100 special assessment. Ms. Hatch appeals her sentence, challenging its procedural reasonableness. Specifically, she contends that her Guidelines sentencing range was incorrectly computed because she should not have been subjected to the § 2A2.2(b)(2)(B) enhancement. We **AFFIRM**.

---

[2] If no enhancements applied, Ms. Hatch's total offense level would have been 14, resulting in a Guidelines imprisonment range of 15 to 21 months.

## II. DISCUSSION

### A. *Scope of the appeal and standard of review.*

The scope of Ms. Hatch's appeal is quite limited. She does not challenge any of the district court's legal analysis in deciding to apply the § 2A2.2(b)(2)(B) enhancement, but instead claims that two of the court's underlying factual findings were clearly erroneous. Ms. Hatch argues that these alleged factual errors undermine the district court's conclusion that Ms. Hatch's sneakers were a dangerous weapon in this case.

Contrary to the district court's findings, Ms. Hatch claims that Mr. Wells was *not* a defenseless victim, and that she did *not* direct her kicks "almost exclusively" at Mr. Wells's head. In the absence of these findings, Ms. Hatch argues, application of the § 2A2.2(b)(2)(B) enhancement is not justified. In other words, Ms. Hatch concedes that tennis shoes can be a "dangerous weapon" under § 2A2.2 — and that they were a dangerous weapon in this case *if* the district court's underlying findings about the assault were correct — but she argues that the sneakers were not a dangerous weapon in this instance because Ms. Hatch's victim was not defenseless, and her sneakers did not empower her to kick her victim exclusively in the head.

We review the district court's factual findings for clear error. *United States v. Talamante*, 981 F.2d 1153, 1158 (10th Cir. 1992). "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing

8

all of the evidence, is left with a definite and firm conviction that a mistake has been made." *Id.*

### B. The finding that Mr. Wells was a defenseless victim.

Ms. Hatch asserts that Mr. Wells was adequately able to protect his head, and thus, contrary to the district court's finding, was not a "defenseless victim." First, she says, the video of the attack shows Mr. Wells keeping his arms around his head while being kicked. Second, Ms. Hatch argues that the video shows that Mr. Wells "largely blocked and blunted" her kicks, as is demonstrated by the fact that she twice bent down, turned Mr. Wells's body, and pummeled him with punches. Third, Ms. Hatch contends that her co-attacker tried to pry Mr. Well's arms away from his head, thus demonstrating their effectiveness as a defense mechanism. Lastly, Ms. Hatch notes that Mr. Wells did not end up sustaining any head injuries, which she claims demonstrates that Mr. Wells was able to defend himself.

We have watched the video of the attack, and are unpersuaded by Ms. Hatch's arguments. It was not erroneous, let alone clearly erroneous, for the district court to conclude that Mr. Wells was largely unable to protect his head from Ms. Hatch's kicks. The video shows that Mr. Wells barely moved once he was on the ground, and that his arms covering his head did not prevent Ms. Hatch's kicks from connecting with his head. This is evidenced by the fact that Ms. Hatch kicked at Mr. Wells's head during the

9

entirety of the attack, rather than focusing her attention on the supposedly less-protected parts of his body. We reject Ms. Hatch's argument that it was a clearly erroneous finding that Mr. Wells was a defenseless victim.

### C. The finding that Ms. Hatch "almost exclusively" directed kicks to Mr. Wells's head.

Ms. Hatch also argues that the district court erred in finding that she "almost exclusively kick[ed] the victim or stomp[ed] on the victim *in the head*." Aplt. Br. at 23 (quotations omitted) (emphasis added). The thrust of Ms. Hatch's argument is that she did not almost exclusively kick Mr. Wells in the head, but instead primarily kicked Mr. Wells's arms, which were covering his head.

Again, we find no clear error in the finding by the district court. The video of the attack shows that Ms. Hatch's kicks and stomps (there were some 25 in any event, by our count) were directed almost exclusively at Mr. Well's head. Even if we assume that Mr. Wells's arms deflected some of the blows from Ms. Hatch's kicks, it is indisputable that on many occasions she successfully made direct contact with his head. And when Ms. Hatch's sneaker did not actually touch Mr. Well's head, she nevertheless delivered a forceful blow to the head that could have caused a head injury. The force from the kicks could certainly transfer through Mr. Wells's arms and have a meaningful impact on his head. Accordingly, we reject Ms. Hatch's claim that the district court clearly erred by finding that Ms. Hatch kicked Ms. Wells almost exclusively in the head.

10

\* \* \*

We conclude that the district court did not clearly err in making the factual findings that Ms. Hatch challenges on appeal.  Accordingly, the judgment and sentence are *AFFIRMED*.


ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge

11