**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clifford C. PLUFF, Jr., Defendant– Appellant.**

**No. 00–30227.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 2001

Filed June 18, 2001

Mandate Recalled and Amended Aug. 6, 2001.

Gerald R. Smith (Briefed), Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

Brent A. Hart (Argued), Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

Nancy D. Cook (Briefed), United States Attorney's Office, Coeur d'Alene, Idaho, for the plaintiff-appellee.

Lynne W. Lamprecht (Argued), United States Attorney's Office, Boise, Idaho, for the plaintiff-appellee.

Before: FARRIS, TROTT, and BERZON, Circuit Judges.

TROTT, Circuit Judge:

The Major Crimes Act, 18 U.S.C. § 1153, ("the MCA") provides for federal jurisdiction over certain major crimes committed by Indians on Indian Reservations. Because some of these offenses are punishable by the federal government only when they occur on Indian Reservations or other federal enclaves, federal definitions do not exist for certain MCA crimes. The MCA fills this gap by instructing that such crimes be "defined and punished" according to the law of the state in which the offense occurred. 18 U.S.C. § 1153(b).

In this appeal, we must decide whether the Major Crimes Act's incorporation of state law for the purposes of defining and punishing certain crimes extends to a state's law on double jeopardy. We conclude that it does not. The MCA's incorporation of state law to define and punish crimes means simply that federal courts must look to state law to determine the elements of and the sentencing schemes applicable to crimes that are not defined federally. Congress did not intend federal courts to adopt wholesale a state's criminal and constitutional law. We therefore AFFIRM the decision of the district court.

## BACKGROUND

In August of 1999, Clifford Pluff and several of his friends burglarized a home in Tensed, Idaho, a small settlement on the Coeur d'Alene Indian Reservation. Neighbors observed Pluff kicking in the door of the house, and saw him walk out of it carrying a television set.

Pluff was charged in Coeur d'Alene Tribal Court with misdemeanor burglary and damaging and destroying property. Although it is not clear from the record whether Pluff is a member of the Coeur d'Alene Tribe, he did not challenge the

Tribe's jurisdiction to punish his offenses, and does not argue that his subsequent federal prosecution violated the Double Jeopardy Clause. *See* 25 U.S.C. § 1301(2); U.S. Const. amend. V, cl. 2. Rather, he pled guilty to the tribal charges, and was sentenced to five days in jail, a years' probation, and ordered to pay fines totaling $150.

Several months after pleading guilty to the tribal charges, Pluff was charged with burglary in federal district court. Because there is no federal definition of burglary, Pluff was prosecuted and punished in accordance with the provisions of Idaho law. *See* Idaho Code § 18–1401.

Pluff moved to dismiss the indictment on the ground that the interplay between the Major Crimes Act and Idaho law barred his federal prosecution. Pluff argued that because federal courts must apply state law to determine how a crime is defined and punished, and because Idaho law will not allow a defendant to be prosecuted twice for the same crime, his prosecution was barred by the terms of the Major Crimes Act. The district court rejected his argument, and Pluff now appeals. We affirm.

## DISCUSSION

### A. Jurisdiction and Standard of Review

■ A district court's construction of a statute is reviewed *de novo,* as are claims that a prosecution violates the double jeopardy clause. *See, e.g., United States v. Schwartz,* 785 F.2d 673, 676 (9th Cir.1986). We have jurisdiction to review Pluff's claim under 28 U.S.C. § 1291.

### B. The Major Crimes Act Does Not Incorporate Idaho's Double Jeopardy Law

We will assume for purposes of this appeal that Idaho law would prohibit Pluff's federal prosecution in this situation, although whether that assumption is correct is far from clear. *Compare State v. Reichenberg,* 128 Idaho 452, 915 P.2d 14, 18 (1996) (holding that the Idaho Constitution provides no greater protection from double jeopardy than does the federal constitution) *with* Idaho Code § 19–315 (providing that a prosecution in another "state, territory, or country" is a bar to prosecution in Idaho).[1]

Pluff argues that the interplay between the Major Crimes Act and Idaho law required that the indictment be dismissed. The Major Crimes Act provides that:

> [a]ny offense ... that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153(b).

Idaho law in turn provides that "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted." Idaho Code § 19–107. The Idaho Code also provides that "[w]hen an act charged as a public offense, is within the venue of another state, territory, or country, a conviction or acquittal thereof in the former is a bar to prosecution or indictment thereof in this state." Idaho Code § 19–315.

---

**1.** Of course, whether Idaho would consider Pluff's double jeopardy rights to have been violated in this situation is something of a moot point, because the State of Idaho has no jurisdiction to try crimes committed by Indians on Indian reservations. *See, e.g., Nevada v. Hicks,* 196 F.3d 1020, 1027 (9th Cir.1999).

Pluff argues that the Major Crimes Act's incorporation of state law in the "definition and punishment" of offenses extends not only to the substantive elements of the crime of burglary and the potential sentences it carries, but also to the issue of whether the prosecution can be brought in the first place. Pluff's argument is tantamount to an assertion that the MCA incorporates the whole of a state's criminal law. Such an interpretation of the MCA is inconsistent with its purpose and case law construing it, as well as precedent interpreting the Assimilative Crimes Act, 18 U.S.C. § 13, an analogous federal statute.

The Major Crimes Act is a "gap-filling" statute. It was enacted in response to a Supreme Court decision holding that the federal government had no jurisdiction to prosecute an Indian for a murder committed on a reservation. *See Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883). The MCA fills this void, granting federal courts jurisdiction over major offenses which Congress perceived to be particularly heinous, and for which it felt tribal punishment systems were inadequate. *See, e.g., Keeble v. United States,* 412 U.S. 205, 209–212, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (detailing circumstances surrounding enactment of Major Crimes Act).

MCA offenses-murder, rape, arson, and burglary, for example-are crimes that states, not the federal government, typically prosecute. Therefore, not all MCA crimes are defined by federal law. Federal jurisdiction thus exists for crimes which have no federal definition. To fill this gap, the Major Crimes Act instructs federal courts to apply the law of the state in which the crime was committed to define and punish offenses not covered by federal law. 18 U.S.C § 1153(b).

In light of this gap-filling purpose, the most reasonable interpretation of the phrase "defined and punished" is just that—defined and punished. By providing that certain crimes will be "defined" by state law, Congress meant that federal courts should look to state law in determining the elements of crimes that are not prosecuted federally except when they arise on Indian reservations or other federal enclaves. Likewise, by using the term "punished," Congress intended federal courts to look to state sentencing provisions to determine penalties for offenses which are not otherwise defined by federal law, unless those penalties are expressly defined by federal law.

We have found only one Ninth Circuit case addressing the interplay between the MCA and state law. *See United States v. Bear,* 932 F.2d 1279 (9th Cir.1989). *Bear* held that state sentencing schemes, rather than the federal sentencing guidelines, apply in MCA prosecutions for crimes that must be "defined and punished" according to state law, and refused to "reduce the states' role in determining punishment to merely establishing minimum and maximum sentences." *Id.* at 1283 (internal citations and quotations omitted). In 1990, however, Congress amended the statute imposing the sentencing guidelines, and it now specifically applies to MCA prosecutions. *See* 18 U.S.C. § 3351(a). *Bear* therefore has no precedential value in cases involving crimes committed after the amendment, and does little to assist our analysis in this case.

Our cases discussing the Assimilative Crimes Act, 18 U.S.C. § 13, ("the ACA") are more helpful. The Assimilative Crimes Act, which provides for federal jurisdiction over crimes committed in federal enclaves such as military bases, is analogous in many respects to the MCA. *See* 18 U.S.C. § 13. The ACA provides that any person who commits an act within federal territory that is not punishable by Congress, but that "would be punishable if committed ... within the jurisdiction of the State, Territory, Possession, or District in which such [federal territory] is situated, ... shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). Thus, although the language and scope of the two statutes is

somewhat different, the Assimilative Crimes Act also adopts state laws to define and punish offenses that are not federally defined. *See id.*

We have rejected the notion that the incorporation of state law for the definition of offenses under the Assimilative Crimes Act extends to "the whole criminal and constitutional law" of the state in which the offense occurred. *See Smayda v. United States,* 352 F.2d 251, 253 (9th Cir. 1965) (holding that California's search and seizure laws do not apply in a prosecution under the ACA), *abrogated on other grounds by Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We have also held that the ACA's adoption of state law does not extend to a state's parole policies. *United States v. Smith,* 574 F.2d 988, 992 (9th Cir.1978).

There is no difference relevant to this case between the purpose of the ACA and that of the MCA. Both statutes were enacted to fill jurisdictional gaps. For the sake of convenience, both statutes adopt state or territorial law to define crimes for which no federal definition exists, and to specify the penalty attached to each offense. Therefore, our cases limiting the reach of state law under ACA prosecutions strongly indicate that the MCA does not incorporate Idaho's double jeopardy law.

Cases from other courts bolster the conclusion that the MCA's incorporation of state law in defining and punishing crimes is limited to the applicable elements and sentencing schemes, and does not include all aspects of state law. For example, *United States v. Norquay* holds that federal courts need not apply a state's law regarding good time credits. 905 F.2d 1157 (8th Cir.1990). The Eighth Circuit has also held that state sufficiency of evidence rules do not apply in an MCA prosecution. *See United States v. Long Elk,* 565 F.2d 1032, 1040 (8th Cir.1977) (stating that although the MCA "adopts state law for certain purposes, the offense remains a federal offense and sufficiency of the evidence should be determined by principles of federal law").

Thus, in light of the purpose of the Major Crimes Act and uniform authority, Pluff's argument that the district court should have applied Idaho's double jeopardy law fails.

What Idaho courts might think about the legality of Pluff's federal prosecution is irrelevant. The MCA's incorporation of state law notwithstanding, the offense for which Pluff was prosecuted was a federal offense, and whether Pluff's prosecution violated the Double Jeopardy Clause is a federal issue to be determined by reference to federal constitutional principles. Pluff has specifically disavowed any federal double jeopardy argument.

AFFIRMED.