FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARNOLD JONES,

    Defendant - Appellant.

No. 18-2129

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-00699-MV-1)**
_____

John V. Butcher, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant – Appellant.

C. Paige Messec, Assistant United States Attorney (John C. Anderson, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Mr. Arnold Jones is a Native American who pleaded guilty to child abuse for driving on a reservation while intoxicated with his minor son in the car. He entered a guilty plea both before a tribal court and, after serving his tribal sentence, before a federal

district court. Although child abuse itself is not a federal offense, federal law incorporates state law offenses committed by Native Americans on tribal land. After Mr. Jones pleaded guilty in federal court, the district court imposed a forty-month sentence. But, as all parties agree, the district court made a miscalculation, imposing twelve unintended months.

Mr. Jones appeals, asking us to vacate his sentence and to remand for imposition of the intended sentence. The government requests that we affirm the erroneous sentence because, it argues, the miscalculation is harmless due to the district court's failure to impose a six-year mandatory minimum sentence. Concluding that the error was not harmless, we reverse and remand for the district court to correct the sentence.

## I.    BACKGROUND

Mr. Jones, a member of the Laguna Pueblo Indian Tribe, drove on tribal land while intoxicated with his six-year-old son in the car. Mr. Jones pleaded guilty in tribal court to driving while intoxicated and child abuse and served a one-year sentence in tribal custody. The federal government then brought charges against Mr. Jones. In federal court, he pleaded guilty to one count of child abuse in violation of 18 U.S.C. § 1153(b) and N.M. Stat. § 30-6-1.

At sentencing, the district court imposed a forty-two-month sentence. But both parties now agree the district court made a calculation error, resulting in a sentence twelve months longer than the intended sentence. Mr. Jones filed this appeal, challenging that error. Although the government concedes the district court erred, it argues the error was harmless because Mr. Jones is subject to a six-year mandatory minimum sentence

2

under New Mexico law. That conclusion, the government argues, is dictated by this court's decision in *United States v. Wood*, 386 F.3d 961 (10th Cir. 2004). Mr. Jones disagrees, claiming there is no minimum mandatory sentence applicable to his crime under New Mexico law. We agree with Mr. Jones and therefore vacate his sentence and remand to the district court with instructions to resentence him.

## II.     DISCUSSION

We begin our analysis by agreeing with the parties that the district court's mathematical error resulted in a sentence different than the one it intended to impose. Next, we consider whether any error is harmless. To answer that question, we first explore the interplay among three distinct statutory provisions—18 U.S.C. § 13 (the "Assimilative Crimes Act" or "ACA"), 18 U.S.C. § 1153 (the "Indian Major Crimes Act" or "IMCA"), and 18 U.S.C. § 3551 of the Sentencing Reform Act ("Sentencing Act")— and relevant case law in the federal circuit courts. After that discussion, we turn to *Wood*, and explain how New Mexico's sentencing scheme is different from the Oklahoma sentencing scheme at issue there. Ultimately, we determine that *Wood* does not dictate the result here because New Mexico does not impose a mandatory minimum sentence on the crime of conviction. Thus, the district court's error was not harmless.

### A.  The Sentencing Error

If a crime is committed by an "Indian . . . against the person or property of another Indian . . . within the Indian country," the offender is "subject to the same law and penalties as all other persons committing" that offense "within the exclusive jurisdiction

of the United States." 18 U.S.C. § 1153(a). But if the crime committed "is not defined and punished by Federal law . . . [it] shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense." *Id.* § 1153(b). In short, for nonfederal crimes committed on tribal land, federal law incorporates state criminal law. Here, New Mexico's child abuse statute, § 30-6-1, was enforced against Mr. Jones in federal court. And because there is no federal sentence for child abuse, the court was required to punish Mr. Jones "in accordance with the laws of" New Mexico. *See* 18 U.S.C. § 1153(b).

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR), that listed a maximum but not a minimum term of imprisonment for Mr. Jones. Neither party objected to the omission of a minimum sentence. At the sentencing hearing, Mr. Jones requested that the district court sentence him to time served—the twelve months he served in tribal prison and the nine months he served in presentence detention—and "up to six months in the halfway house[] and intensive outpatient treatment." ROA, Vol. III at 8; *see also* Appellant's Br. at 5–6. The government requested a sixty-month sentence.[1] The district court did not accept either recommendation.

---

[1] In requesting a sixty-month sentence, the government sought a sentence below the six-year sentence it now alleges is the minimum sentence available under New Mexico law. But the government correctly notes it cannot concede an illegal sentence. *See United States v. Moyer,* 282 F.3d 1311, 1318–19 (10th Cir. 2002); *United States v. Johnson*, 973 F.2d 857, 859–60 (10th Cir. 1992).

Instead, the district court concluded that Mr. Jones should serve "an additional nine months" beyond the time he had already served. ROA, Vol. III at 32. But then, as both parties agree, the district court made a calculation error. It sentenced Mr. Jones to forty-two months but reduced his sentence to forty months by permitting him the good-time credits he would have received if he had spent his first twelve months in federal as opposed to tribal custody. The district court explained its sentencing decision as follows: "42 months, minus the 12 months . . . already served" and "the 12 months you've served in tribal custody, the nine-and-a-half months that you've served in federal custody, leaves you approximately nine months." ROA, Vol. III at 32. The district court seems to have double-counted the twelve months Mr. Jones served in tribal custody because that twelve-month period was the only twelve months "already served." Absent this explanation, we, like the government, "cannot come up with any equation that starts with 40 or 42 months and results in 9 months for [Mr.] Jones left to serve." *See* Appellee's Br. at 4. Accordingly, we agree with the parties that the district court made a calculation error that resulted in a sentence longer than the court intended to impose.

Generally, in circumstances such as these, we would vacate Mr. Jones's sentence and remand for the district court to resentence him. But the government argues this avenue is unavailable because Mr. Jones was subject to a six-year mandatory minimum sentence under New Mexico law. And because the erroneous sentence is below six years, the government argues Mr. Jones cannot show harm. For the reasons we now explain, we disagree.

5

## B. Harmlessness

### 1. Statutory Interplay

To place this issue in context, we begin with a discussion of the three statutes relevant to this dispute: the ACA; the IMCA; and the Sentencing Act. The ACA was the first of these statutes to be enacted. "[I]n the 1820s, Daniel Webster introduced the ACA," in a time "when federal criminal statutes were few" and thus federal enclaves[2] "were pretty literally lawless." *United States v. Christie*, 717 F.3d 1156, 1170 (10th Cir. 2013). "Instead of trying to write an exhaustive criminal code for federal enclaves," Congress passed the ACA to "borrow from preexisting state law." *Id.* The ACA provides that anyone "guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such [enclave] is situated, . . . shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). Thus, the ACA performs a gap-filling function by "borrowing state law" to bolster the "federal criminal

---

[2] "A federal enclave is created when a state cedes jurisdiction over land within its borders to the federal government and Congress accepts that cession. These enclaves include numerous military bases, federal facilities, and even some national forests and parks." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012). Under the Federal Enclave Act, Congress mandated that general laws of the United States applicable in federal enclaves also apply in Indian country, except where the offense was committed by one Indian against the person or property of another Indian. 18 U.S.C. § 1152. Then, in the Indian Major Crimes Act, 18 U.S.C. § 1153, Congress extended jurisdiction over Indians in Indian country for the commission of specific "major" crimes against other Indians. The federal government prosecuted Mr. Jones for his crime committed in Indian country under the Indian Major Crimes Act.

law that applies on federal enclaves," and that function has been described as the ACA's "basic purpose." *Lewis v. United States*, 523 U.S. 155, 160 (1998).

The IMCA, the first version of which was enacted in 1885, *see United States v. Doe*, 572 F.3d 1162, 1169 (10th Cir. 2009), has likewise been described as providing a gap-filling function, *see United States v. Pluff*, 253 F.3d 490, 494 (9th Cir. 2001), *as amended* (Aug. 6, 2001) ("There is no difference relevant to this case between the purpose of the ACA and that of the [I]MCA. Both statutes were enacted to fill jurisdictional gaps."). Unlike the ACA, however, the IMCA applies only to crimes committed by an "Indian . . . against the person or property of another Indian or other person . . . within Indian country." 18 U.S.C. § 1153(a). The first provision of the IMCA is concerned with national uniformity. It provides that the offender is "subject to the same law and penalties as all other persons committing" that offense "within the exclusive jurisdiction of the United States." *Id.* But the second provision establishes the ACA-analogous, gap-filling function discussed by the Ninth Circuit in *Pluff*: If the crime committed "is not defined and punished by Federal law . . . [it] shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense." *Id.* § 1153(b). In short, for nonfederal crimes committed by Indians on tribal land, federal law incorporates state criminal law. Here, New Mexico's child abuse statute, § 30-6-1, was enforced against Mr. Jones in federal court under the second provision of the IMCA because the crime was committed on a reservation and child abuse is not defined by federal law.

"[B]ecause of the similarities between the [ACA and IMCA]," it is unsurprising that courts look to cases interpreting one to shed light on the interpretation of the other. *See Wood*, 386 F.3d at 962 n.1–2. But despite their similarities in function, the language of the two statutes is distinct. While the ACA requires only that a federal court apply state law to the extent necessary to hold the defendant "guilty of a *like* offense and subject to a *like* punishment," 18 U.S.C. § 13(a) (emphasis added), the text of the IMCA requires that the crime be "defined and punished in accordance with the laws of the State in which such offense was committed," *id.* § 1153(b). This distinction has caused historical divisions among the circuits.

In *United States v. Garcia*, 893 F.2d 250 (10th Cir. 1989), we considered "whether the guidelines promulgated by the United States Sentencing Commission apply to violations of the [ACA]." *Garcia*, 893 F.2d at 251. This was an open question because, at that time, the Sentencing Act stated, "[e]xcept as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter." 18 U.S.C. § 3551(a) (1988). Although the ACA provided that the federal defendant "shall be guilty of a like offense and subject to a like punishment," 18 U.S.C. § 13(a), it was uncertain whether the Sentencing Act governed the ACA or if the ACA fit into the Sentencing Act's exception as a sentencing scheme "otherwise specifically provided."[3] We resolved this question,

---

[3] In *Garcia*, it was unclear "whether the district court based its sentence on the [IMCA] or on the [ACA]," but because both parties "treat[ed] the sentence as having been based on the [ACA]" and because "the sentence would be the same under either

8

concluding that the Guidelines did apply to the ACA and that the ACA did not require "duplicat[ing] every last nuance of the sentence that would be imposed in state court." *Garcia*, 893 F.2d at 251–52; 254. Instead, we held that only the "maximum and minimum terms established by state law" were incorporated via the ACA and that "within the range of discretion permitted to a state judge, a federal judge should apply the federal sentencing guidelines to the extent possible." *Id.* at 254; *see also United States v. Pinto,* 755 F.2d 150, 154 (10th Cir. 1985) (holding that the ACA did not require imposition of two-year parole term made mandatory under state law).

In its opinion in *United States v. Norquay*, 905 F.2d 1157 (8th Cir. 1990), the Eighth Circuit relied on our opinion in *Garcia* to hold the Guidelines also apply to crimes "committed by an Indian on an Indian reservation in violation of the [IMCA]." *Norquay*, 905 F.2d at 1160. The Eighth Circuit concluded that the Minnesota law for computing good time credits and determining whether a sentence should run concurrently or consecutively was not incorporated under the IMCA. *Id.* at 1158. Rather, the IMCA "require[d] only that the sentence imposed . . . fall within the minimum, if any, and maximum established by state law." *Id.* at 1160–61 (citing *Garcia*, 893 F.2d at 254). But not every circuit agreed about the applicability of *Garcia* to the IMCA.

The Ninth Circuit held that the Guidelines did not apply to the IMCA and distinguished *Garcia* based on the divergent language of the two statutes. *United States v.*

_____

[statute]," we assumed "for purposes of th[at] opinion" that the sentence was based on the ACA. *Garcia*, 893 F.2d at 253 n.3.

9

*Bear*, 932 F.2d 1279, 1283 (9th Cir. 1990) ("We conclude that since the statutory language discussing punishments in the [ACA] is markedly different from that found in [the IMCA], the reasoning of the Tenth Circuit in *Garcia* should not govern our reasoning in this case."), *superseded by statute*, Sentencing Reform Act, 18 U.S.C. § 3551(a). The Ninth Circuit did not "pass upon the wisdom of the *Garcia* holding" because that holding was based on the "like punishment" language of the ACA, while the IMCA imposes a stricter requirement that courts "define and punish a non-federally-defined criminal offense in accordance with state law." *Id.* The Ninth Circuit then declined to adopt the Eighth Circuit's reasoning in *Norquay*, explaining that it chose "not 'to reduce the states' role in determining punishment to merely establishing minimum and maximum sentences.'" *Id.* (quoting *Norquay*, 905 F.2d at 1161 (Gibson, J., dissenting)). The court explained:

> The Guidelines were designed to promote uniformity among federal sentences. Our decision in this case, however, is predicated upon a different kind of concern for uniformity: intrastate uniformity in sentencing for Indians and non-Indians who commit the same state offenses. Holding that an Indian who commits a state law crime of burglary should be sentenced differently than a non-Indian who commits the same state law crime would clearly undermine the policy of uniformity Congress sought to promote in passing [the IMCA]. Our decision upholds that policy.

*Id.* (internal citation omitted). Although the Ninth Circuit's reasoning seemed persuasive at the time, in 1990, the same year *Bear* and *Norquay* were decided, Congress amended the Sentencing Act.

Prior to 1990, § 3351(a) of the Sentencing Act stated that "[e]xcept as otherwise specifically provided, a defendant who has been found guilty of an offense described in

any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter." *Garcia*, 893 F.2d at 253 (quoting 18 U.S.C. § 3551(a) (1988)). Wrestling with this language, the courts in *Garcia*, *Norquay*, and *Bear* considered whether the Guidelines apply to offenses described by the ACA and IMCA—unquestionably federal statutes—despite the language of those statutes pointing to state law as providing the relevant sentencing law. But the Sentencing Reform Act was amended in 1990 to explicitly include § 13 (the ACA) and § 1153 (the IMCA): "Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, *including sections 13 and 1153 of this title*, . . . shall be sentenced in accordance with the provisions of this chapter." 18 U.S.C. § 3551(a) (1990) (emphasis added).

It is with this backdrop that we considered the relationship between the IMCA and the now-amended Sentencing Act in *Wood*.

### 2.      *United States v. Wood*

Prior to *Wood*, it was unsettled in this circuit whether *Garcia*'s approach to the ACA applied to the IMCA. That is, the question remained open whether for purposes of the IMCA we would limit the incorporation of state law to the maximum and minimum sentences or instead, also incorporate state "sentencing schemes." *See Pluff*, 253 F.3d at 494. We resolved that question in *Wood.* There, the defendant was convicted of committing Oklahoma second-degree burglary "in Indian Country." *Wood*, 386 F.3d at 962. Oklahoma law then provided that second-degree burglary was punishable by imprisonment "not exceeding seven (7) years and not less than two (2) years." *Id.* (citing

11

21 Okla. Stat. § 1436(2)). Thus, the applicable Oklahoma law in *Wood* contained an express minimum mandatory sentence. *Cf. Stringfellow v. State*, 744 P.2d 1277, 1280 (Okla. Crim. App. 1987) (explaining that the "minimum sentence" for first-degree burglary is not less than seven years); *Walker v. State,* 738 P.2d 181, 183 (Okla. Crim. App. 1987) ("Appellant was sentenced within the limits of the [burglary after a prior conviction] statute in which the minimum sentence is set at ten years imprisonment."). But Oklahoma law also provided a suspension provision that granted state courts discretion to suspend a sentence of imprisonment with or without the imposition of probation. *See Wood*, 386 F.3d at 962. Although the federal guideline range was less than the state two-year minimum sentence, we held the guideline range had to yield to the state mandatory minimum sentence. *Id.* at 962–63.

We explained that § 3551(a) requires violators of the IMCA to be "sentenced in accordance with the provisions of this chapter" and that § 3553(b) "of the same chapter directs the imposition of a criminal sentence in accordance with the Guidelines." *Id.* at 962 n.2. Under the Guidelines, "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." *Id.* at 962 (quoting U.S.S.G. § 5G1.1(b)). Applying *Garcia* to the IMCA for the first time, we concluded that the IMCA incorporated the "maximum and minimum terms established by state law." *Id.* at 963 (quoting *Garcia*, 893 F.2d at 254). Thus, because the IMCA incorporated the maximum and minimum state law sentences and because the Guidelines required the imposition of a minimum statutory sentence when the guideline range falls below that

12

minimum, we held that under § 1153(b), the Guidelines required the district court to impose a "sentence between the minimum and maximum sentences state law establishes for th[e] particular crime." *See id.* at 962–63.

As to Oklahoma's suspension provision, we declined to incorporate it because the IMCA did not "require[] a federal court to follow '"every last nuance of the sentence that would be imposed in state court,"'" *id.* at 963 (quoting *Norquay*, 905 F.2d at 1162 (quoting *Garcia*, 893 F.2d at 254)) (internal quotation marks omitted). And because "the Guidelines deny a district court the discretion to suspend a sentence of imprisonment," we concluded that courts could not apply the state suspension provisions to depart from the mandatory minimum sentence for "defendants convicted of violating the IMCA and sentenced in accordance with the Guidelines." *See id.* We justified our reasoning as consonant with other courts that had "consistently declined to assimilate [provisions of] state sentencing laws if such laws conflicted with the Guidelines and their underlying policies," *see id.*, apparently implying that incorporating state suspension provisions would conflict with the Guidelines and their underlying policies. *Id.* (citing *United States v. Pate,* 321 F.3d 1373, 1376 (11th Cir. 2003) (collecting cases)).

After the 1990 amendments to § 3351(a), the Ninth Circuit also reconsidered its previous position. *See Pluff*, 253 F.3d at 493. The court explained that because the Guidelines "now specifically apply to [I]MCA prosecutions," *Bear* "has no precedential value in cases involving crimes committed after the [1990] amendment." *Id.* But the Ninth Circuit does not appear to have adopted wholesale the conclusions reached in *Norquay, Garcia,* or *Wood*. *See id.* at 493–94. Instead, it concluded that "the [I]MCA's

13

incorporation of state law in defining and punishing crimes is limited to the applicable elements [of the crime] and *sentencing schemes*." *Id.* at 494. That is, *Pluff* at least suggests that the federal sentencing court could incorporate more than the state minimum and maximum sentences. But, as explained below, we need not determine whether more than the maximum and minimum sentences of the New Mexico sentencing scheme should be incorporated because unlike the Oklahoma offense at issue in *Wood*, the offense here is not subject to a mandatory statutory minimum sentence.

According to the government, *Wood*'s holding that "the Guidelines deny a district court the discretion to suspend a sentence of imprisonment" binds the federal sentencing court in Mr. Jones's case to six years as the state mandatory minimum sentence. *Wood*, 386 F.3d at 963. Therefore, the government argues, Mr. Jones has not been harmed by the district court's miscalculation of his sentence because it still falls below that state mandatory minimum. Mr. Jones disagrees, arguing that under New Mexico's sentencing scheme there is no minimum mandatory sentence for his offense. We agree with the government that *Wood* precludes federal sentencing courts from incorporating and applying state suspension provisions to depart from a state mandatory minimum sentence. But because of the differences between the New Mexico and Oklahoma sentencing schemes, we agree with Mr. Jones that New Mexico has not established a minimum mandatory sentence for this offense and therefore there is no mandatory minimum for a federal sentencing court to incorporate under *Wood*.

14

**3.** **New Mexico Sentencing Scheme**

New Mexico law establishes a "basic sentence" for each class of felony and requires that such basic sentences "be imposed" "unless the court alters the sentence pursuant to the provisions of the Criminal Sentencing Act." N.M. Stat. Ann. § 31-18-15(A)–(B). In turn, the New Mexico Criminal Sentencing Act[4] permits the court to alter the basic sentence in several ways. First, New Mexico courts may reduce a "basic sentence as prescribed in [§ 31-18-15] upon . . . a finding by the judge of any mitigating circumstances surrounding the offense or concerning the offender." *Id.* § 31-18-15.1(A). But the reduction "in no case shall . . . exceed one-third of the basic sentence." *Id.* § 31-18-15.1(G). That prohibition is more flexible than it at first appears as to some crimes, however, because New Mexico law also provides that:

> Upon entry of a judgment of conviction of any crime not constituting a capital or first degree felony, any court having jurisdiction when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may either:
>
> A. enter an order deferring the imposition of sentence;
> B. sentence the defendant and enter an order suspending in whole or in part the execution of the sentence; or
> C. commit the convicted person, . . . to the department of corrections . . . with direction that the court be given a report when the diagnosis is complete as to what disposition appears best when the interest of the public and the individual are evaluated.

---

[4] The Criminal Sentencing Act encompasses "Chapter 31, Article 18" of the New Mexico annotated statutes. N.M. Stat. Ann. § 31-18-12.

15

§ 31-20-3. Accordingly, in New Mexico, the sentencing court can impose the basic sentence, impose a sentence one-third lower than the basic sentence, suspend all or part of the sentence imposed, or defer imposition of the sentence entirely.

A New Mexico "trial court has discretion to vary the penalty for a crime by suspending part or all of the sentence, depending on a wide variety of factors." *State v. Candelaria*, 825 P.2d 221, 223 (N.M. Ct. App. 1991) (citing N.M. Stat. Ann. § 31-20-3). Under § 31-20-3, that discretion includes "enter[ing] an order suspending in whole or in part the execution of the sentence" when the trial court determines that such a suspension satisfies "the ends of justice" and serves "the best interest of the public as well as the defendant." N.M. Stat. Ann. § 31-20-3(B).

New Mexico courts also have discretion to impose probation "if the defendant is in need of supervision, guidance[,] or direction," but it may only impose probation if it first defers or suspends the defendant's sentence under § 31-20-3. *See* N.M. Stat. Ann. § 31-20-5 ("When a person has been convicted of a crime for which a sentence of imprisonment is authorized and when the . . . district court has deferred or suspended [that] sentence, it shall order the defendant to be placed on probation for all or some portion of the period of deferment or suspension . . . ."). In contrast, when a sentence is deferred by a New Mexico court, it is possible the defendant will never be sentenced at all. *See United States v. Reese*, 326 P.3d 454, 459 (N.M. 2014) (speaking of deferment of criminal sentences: "[F]or less serious felonies, the Legislature provided courts with an option, one which t[akes] place after plea or conviction but *before* any sentence [is] imposed. Deferment, if successfully completed, would result in no actual sentence being

16

imposed and ultimately in a dismissal of the charges."); *see also United States v. Reese*, 505 F. App'x 733, 735 (10th Cir. 2012) (unpublished) (noting that "[w]hen the state court entered a conviction pursuant to the parties' plea agreement, it deferred imposition of [the defendant's] sentence for eighteen months" and when the defendant "completed this period of deferred adjudication without incident, the court dismissed the criminal charge").

When the New Mexico courts suspend or defer a sentence, with or without probation, they are not required to attach any conditions. *See* N.M. Stat. Ann. at § 31-20-6. New Mexico courts have discretion to attach "reasonable conditions as [they] may deem necessary to ensure that the defendant will observe the laws," but there is no requirement that they do so. *Id.* In short, although New Mexico law provides a specific sentence for each class of felony, state courts enjoy broad discretion to depart from those basic sentences and there is no requirement that the court impose any period of incarceration.

Mr. Jones pleaded guilty to a second-degree felony and thus would have been subject to a basic sentence of nine years if tried in New Mexico courts. *See* ROA, Vol. II at 1, 21; N.M. Stat. § 30-6-1(D)–(E); *id.* § 31-18-15(A)(7) (imposing a nine-year sentence for second degree felonies). Under §§ 31-18-15.1(A)(1), 31-18-15.1(G), a New Mexico sentencing court could reduce his basic sentence by one-third, or down to six years, if it made a finding of "any mitigating circumstances." N.M. Stat. Ann. § 31-18-15.1. But that six-year sentence is not the lowest sentence available under New Mexico law. If Mr. Jones were sentenced by a New Mexico court, that court could further reduce the time

17

Mr. Jones actually served under the state suspension provisions by imposing the appropriate basic sentence (between nine and six years, depending on the reduction applied after finding a mitigating factor) and then "enter[ing] an order suspending in whole or in part the execution of th[at] sentence." *See id.* § 31-20-3. Or the state court could defer sentencing entirely. *Id.* The state court would then be free to impose probation or attach reasonable conditions to the suspension of his sentence, or not. *See id.* §§ 31-20-5, 31-20-6. Thus, under the New Mexico sentencing scheme, Mr. Jones would not be required to serve six years—he would not be required to serve any period of incarceration or even to receive any sentence at all.

Under these circumstances, we cannot agree with the government that Mr. Jones is subject to a minimum mandatory sentence of six years under New Mexico law. Nor are we convinced that *Wood* dictates such a result. In *Wood,* we imposed the mandatory minimum sentence set forth by Oklahoma law, which provided an express minimum mandatory sentence for second-degree burglary: imprisonment "not exceeding seven (7) years *and not less than two (2) years.*" 21 Okla. Stat. § 1436(2) (2004) (emphasis added). In contrast, New Mexico defines a minimum mandatory sentence differently under its state law.

Important for our purposes, the New Mexico legislature has not dictated that a person who violates N.M. Stat. § 30-6-1 must "serve no less than" any particular sentence because New Mexico courts do not interpret the state law as imposing a minimum mandatory sentence in every instance. In *State v. Martinez*, 966 P.2d 747 (N.M. 1998), the defendant pleaded guilty to his third offense of driving while intoxicated. The state

18

magistrate sentenced the defendant to 364 days in jail, suspending all but 90 days of the sentence. *Martinez*, 966 P.3d at 747. The court later granted the defendant credit toward that 90 days based on the defendant's participation in an alcohol treatment program. *Id.* Because the unsuspended 90 days of jail time was the minimum mandatory sentence imposed by the legislature, the New Mexico Supreme Court held that the sentencing court improperly substituted participation in the treatment program for incarceration. *Id.* at 748. Relevant here is the supreme court's discussion of the New Mexico sentencing scheme.

> In Section 66-8-102, the Legislature has provided for multiple sentencing options. Specifically, for third offenders convicted of aggravated DWI, the Legislature has provided for a mandatory minimum jail term of 90 days. This mandatory sentence is not to be suspended, deferred, or taken under advisement.

*Martinez,* 966 P.2d at 751 (citation omitted). That is, the New Mexico Supreme Court defined the minimum mandatory sentence as the part of the sentence that the legislature had indicated could not be suspended, deferred or taken under advisement. *See State v. Cunningham*, No. A-1-CA-35540, 2018 WL 1801152 (Ct. App. N.M. 2018) (holding that defendant's guilty plea was not rendered involuntary for failure to notify him of the minimum mandatory sentence because, where a sentence could be altered, suspended or deferred, there was no minimum mandatory sentence).

Under *Garcia* and *Wood*, only the "maximum and minimum terms established by state law" are incorporated via the ACA and IMCA. *Wood,* 386 F.3d at 963; *Garcia*, 893 F.2d at 251–52; 254. Because the New Mexico legislature has not dictated that any portion of the sentence for violation of N.M. Stat. § 30-6-1 cannot be altered, suspended,

or deferred, there is no minimum term established by New Mexico law. Thus, Mr. Jones is correct that New Mexico does not impose a six-year mandatory minimum sentence for his crime of conviction.

## 4. Application

*Wood* relied on the Guidelines' instruction that, "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." *Wood*, 386 F.3d at 962 (quoting U.S.S.G. § 5G1.1(b)). As discussed, the Oklahoma statute at issue in *Wood* contained a traditional mandatory minimum sentence. *See id.* (noting that in Oklahoma, the offense is punishable by imprisonment "not exceeding seven (7) years and not less than (2) years").[5] But New Mexico defines the minimum mandatory sentence for an offense as the part of the sentence that the legislature has dictated cannot be altered, suspended, or deferred. For Mr. Jones's crime, the New Mexico legislature has not established a mandatory minimum sentence. Accordingly, U.S.S.G. § 5G1.1(b) is inapplicable and the sentencing court could sentence Mr. Jones according to the Guidelines generally. And where the sentence intended by the sentencing court fell within the Guidelines range, there is nothing that would prevent the court from correcting

---

[5] Oklahoma has since amended its sentencing scheme, removing the mandatory minimum sentence for the crime of conviction in *Wood*. 21 Okla. Stat. § 1436(2) (2018) (providing that "Burglary in the second degree [is punishable by imprisonment] not exceeding seven (7) years").

Mr. Jones's sentence on remand. Accordingly, the miscalculation by the sentencing court was not harmless.

### III.    CONCLUSION

We VACATE Mr. Jones's sentence and remand with instructions to the district court to resentence him.