**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ERIC MARTINEZ,

    Defendant - Appellant.

No. 20-2126

———————————————

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:19-CR-00565-JCH-1)**
———————————————

Aric G. Elsenheimer, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

David Patrick Cowen, Assistant United States Attorney (and John C. Anderson, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.
———————————————

Before **TYMKOVICH**, Chief Judge, **KELLY**, and **McHUGH**, Circuit Judges.
———————————————

**KELLY**, Circuit Judge.
———————————————

    Defendant-Appellant Eric Martinez appeals from the district court's imposition

of a 27-month sentence for his burglary conviction under the Indian Major Crimes

Act.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## Background

In February 2016, Mr. Martinez and two accomplices burglarized a residence within the boundaries of the Navajo Nation in McKinley County, New Mexico. During the burglary, Mr. Martinez used a hammer to break a hole in the front door near the doorknob to gain entry to the residence.  An accomplice pried open the back door.  Mr. Martinez placed the hammer on a table in the living room.  He and his accomplices took valuable items from the residence, including electronics, jewelry, and ceremonial shawls and robes.

Mr. Martinez was charged under the Indian Major Crimes Act (IMCA), which applies state criminal codes to "assimilated" offenses committed in Indian Country that are not defined under federal law.  Mr. Martinez ultimately pled guilty to an assimilated New Mexico burglary offense under N.M. Stat. Ann. § 30-16-3.  At sentencing, Mr. Martinez argued that federal law permitted the district court to impose a conditional discharge.  This would allow a term of probation without entry of a judgment of conviction, a sentence possible had his case been adjudicated in New Mexico state court.  He also objected to a two-level sentencing enhancement under U.S.S.G. § 2B2.1(b)(4) for possessing a dangerous weapon on the basis that he did not use the hammer as a weapon during the burglary.

The district court rejected these arguments.  The district court ruled that a conditional discharge was not available in federal court and that Mr. Martinez's

possession of the hammer during the burglary warranted the two-level enhancement. The district court additionally found that a conditional discharge would not be appropriate under the circumstances even if it were available, and sentenced Mr. Martinez to 27 months and a year of supervised release.

## Discussion

In reviewing the district court's application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error. United States v. Wolfe, 435 F.3d 1289, 1295 (10th Cir. 2006).

### A. Conditional Discharge

As an initial matter, the government notes that we can affirm without ruling on the availability of a conditional discharge in federal court. The district court decided that even if a conditional discharge were available, it was not appropriate in this case. Mr. Martinez did not address this argument in his briefing. However, at oral argument he contended that we should reach the issue because the district court "started at the wrong place" in determining Mr. Martinez's sentence. The government responds that any such error would have been harmless. We need not reach these arguments, however, because we find that the district court did not err in concluding that a conditional discharge was unavailable.

New Mexico's conditional discharge statute permits a court to forego entering an adjudication of guilt following a conviction and instead enter a conditional discharge placing the defendant on probation. N.M Stat. Ann. § 31-20-13(A). If the

defendant violates any of the terms of the probation, the court may then enter an adjudication of guilt and otherwise sentence the person. N.M. Stat. Ann. § 31-20-13(B). A conditional discharge is only available to those found guilty of crimes eligible for a deferred or suspended sentence under New Mexico law. N.M. Stat. Ann. § 31-20-13(A).

The IMCA assimilates into federal law the definition and punishment of certain state crimes that, like burglary, are "not defined and punished by Federal law." 18 U.S.C. § 1153(b). The assimilated state offense becomes a federal offense punishable under federal law. United States v. Wood, 386 F.3d 961, 962 (10th Cir. 2004). In sentencing a defendant for an assimilated offense, a federal court may not impose a sentence that falls outside the range of minimum and maximum punishments authorized for the offense under state law. United States v. Garcia, 893 F.2d 250, 251–52 (10th Cir. 1989) (superseded by statute, 18 U.S.C. § 3551(a)).[1]

Incorporation of state law is limited to the maximum and minimum penalties for the offense and does not extend to "state 'sentencing schemes.'" United States v. Jones, 921 F.3d 932, 937–38 (10th Cir. 2019). On this basis, we have held that state law provisions authorizing suspended sentences are not incorporated under the IMCA. Id. (citing Wood, 386 F.3d at 963).

---

[1] Garcia dealt with the Assimilative Crimes Act (ACA) rather than the IMCA. However, because the statutes are similar and involve the same sentencing procedures, we consider ACA cases in interpreting similar provisions of the IMCA. Wood, 386 F.3d at 962 n.2.

4

Mr. Martinez relies primarily on two out-of-circuit cases to support his contention that the district court had authority to impose a conditional discharge. In United States v. Bosser, the Ninth Circuit held that Hawaii's deferred acceptance rule, which operates much like New Mexico's conditional discharge, is a form of punishment available to defendants sentenced for assimilated crimes in federal court. 866 F.2d 315, 317 (9th Cir. 1989). In so holding, the court emphasized that deferred acceptance constitutes punishment "within the meaning of the ACA" and therefore was available under federal law. Id. at 317–18. In United States v. Sylve, the Ninth Circuit similarly held that Washington's pre-conviction rehabilitation program is assimilated into federal law under the ACA. 135 F.3d 680, 683–84 (9th Cir. 1998). Relying on these cases, Mr. Martinez argues that a conditional discharge is punishment under state law and is therefore incorporated by the IMCA. Hence, such an alternative is available to federal courts at sentencing.

These cases are distinguishable. Bosser was decided in 1989, one year before the Sentencing Reform Act was amended to specify that the federal sentencing framework applies to convictions under the ACA and the IMCA. See 18 U.S.C. § 3551(a). And in any event, the cases are not binding on this court and are inconsistent with Tenth Circuit case law. In Wood, we explained that a federal court cannot apply a state sentence suspension provision to depart from a state mandatory minimum sentence because "the Guidelines deny a district court the discretion to suspend a sentence of imprisonment." 386 F.3d at 963. Mr. Martinez contends that Wood was undermined by the Supreme Court's decision in United States v. Booker,

5

543 U.S. 220 (2005), rendering the Guidelines advisory rather than mandatory. However, Wood did not turn on the then-mandatory nature of the guidelines. Instead, the decision was based on the conclusion that federal courts assimilate only the maximum and minimum penalties under state law and do not assimilate state sentencing schemes that conflict with the Guidelines. See Wood, 386 F.3d at 963. And more recently in Jones, we concluded that New Mexico's conditional discharge provision affects the minimum mandatory sentence under New Mexico law for an offense subject to that provision. 921 F.3d at 942. However, we also reiterated the conclusion that federal courts incorporate only the minimum and maximum sentences under state law and do not incorporate state sentencing schemes. Id. at 941. Under the Sentencing Reform Act and the IMCA, Mr. Martinez could have been sentenced to probation, a fine, or imprisonment. 18 U.S.C. § 3551(b). But the district court could not assimilate a state provision permitting a conditional discharge.

## B. Dangerous Weapon Enhancement

Mr. Martinez next challenges the district court's application of the two-level sentencing enhancement for possession of a dangerous weapon.

Section 2B2.1(b)(4) of the Sentencing Guidelines provides for a two-level increase if "a dangerous weapon [] was possessed" during the offense. The commentary to the rule specifies that a dangerous weapon is "an instrument capable of inflicting death or serious bodily injury," or one that either "closely resembles such an instrument" or was used "in a manner that created the impression that the object was such an instrument." U.S.S.G. §§ 1B1.1 n.1(E); 2B2.1 n.1.

6

Mr. Martinez does not dispute that he possessed a hammer during the burglary. Rather, he argues that the hammer does not qualify as a dangerous weapon under § 1B1.1 because he did not use the hammer as a weapon during the offense. For support, Mr. Martinez points to § 2A2.2, the guidelines provision governing aggravated assault. He notes that the commentary to that section states that the term dangerous weapon "has the meaning given that term in § 1B1.1" and "includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 n.1. He contends that the exclusion of the second part of this definition from § 1B1.1 means that items not ordinarily used as weapons, like hammers, do not qualify as dangerous weapons under § 1B1.1 unless they are actually used as weapons.

This argument overlooks the text of §§ 2B2.1 and 1B1.1, which require only that a defendant "possess[]" "an instrument capable of inflicting death or serious bodily injury." Therefore, unlike § 2A2.2, which focuses on the use or threatened use of the object, § 2B2.1 is concerned only with the defendant's possession of the object and the object's dangerous capabilities. Indeed, the Second Circuit has considered and rejected an argument nearly identical to Mr. Martinez's. The fact the defendant did not use a sledgehammer as a weapon when he used it to gain entry to a bank was "irrelevant to the issue of possession" and the enhancement therefore was properly applied. United States v. Pope, 554 F.3d 240, 245–46 (2d Cir. 2009). Clearly, a hammer is "an instrument capable of inflicting death or serious bodily

7

injury," U.S.S.G. § 1B1.1 n.1(E),[2] and there is no dispute that Mr. Martinez possessed a hammer during the burglary. The sentencing enhancement therefore was properly applied.

AFFIRMED.

---

[2] Citing cases in which unusual items have been held to constitute dangerous weapons, e.g., United States v. Hatch, 490 F. App'x 136, 140 (10th Cir. 2012) (tennis shoes); United States v. Tolbert, 668 F.3d 798, 802 (6th Cir. 2012) (plastic water pitcher), Mr. Martinez argues that a broad definition of "dangerous weapon" could lead to absurd results. First, these cases are of limited relevance because they involve defendants convicted of assault. See, e.g., Hatch, 490 F. App'x at 138; Tolbert, 668 F.3d at 799. As discussed above, the assault guidelines are concerned with the defendant's use of an object to cause injury or with the intent to do so. See U.S.S.G. § 2A2.2(b)(2)(B). The guidelines applicable to burglary, however, are concerned with the defendant's possession of an object capable of causing serious injury. See U.S.S.G. §§ 1B1.1 n.1(E); 2B2.1 n.1. In any event, even if it is possible that a case could arise in which Mr. Martinez's concern may be well-founded, it is beyond reasonable dispute here that a hammer is capable of causing death or serious injury.