FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 13, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                                    No. 22-5037

CONNER LEE POLK,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:21-CR-00294-GKF-1)**
_____

Andrew M. Casey of Hendrick, Casey, Hutter, PLLC, Oklahoma City, Oklahoma (Shannon M. McMurray of Viridian Legal Services, PLLC, Tulsa, Oklahoma, with him on the briefs), for Defendant-Appellant.

Leena Alam, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, Chantelle Dial, Assistant United States Attorney, on the briefs), United States Attorney's Office, Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **MORITZ**, **SEYMOUR**, and **EID**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Conner Lee Polk appeals his four-year prison sentence under the Assimilative

Crimes Act (ACA), 18 U.S.C. § 13, for committing a state-law offense on an Indian

reservation in Oklahoma. Polk argues that the district court should have considered imposing a shorter prison term under an Oklahoma statute that permits a departure from a mandatory minimum sentence in certain circumstances. Because this state law conflicts with federal sentencing policy, the district court properly declined to apply it, and we affirm Polk's sentence.

## Background

In December 2019, Polk crashed his pickup truck into two cars while intoxicated, seriously injuring occupants in one of the vehicles. Because this conduct occurred on an Indian reservation and Polk is an Indian, a federal prosecution ensued under the ACA. As explained in more detail later, the ACA applies to acts committed on an Indian reservation that are crimes in the state within which the reservation is located—here, Oklahoma—but are not otherwise crimes under federal law. *See* § 13(a). The government charged Polk under the ACA with an Oklahoma DUI offense that carries a mandatory prison sentence of at least 4 years and at most 20 years. *See* Okla. Stat. tit. 47, § 11-904(B)(1). He eventually pleaded guilty to that offense.[1]

Despite the mandatory minimum applicable to his offense, Polk at sentencing requested a prison term of less than four years. For support, he cited Oklahoma's "safety-valve" law, which allows state-court judges in certain circumstances to

---

[1] Polk also pleaded guilty to an ACA offense for involvement in an accident that damaged a vehicle, *see* Okla. Stat. tit. 47, § 10-103, for which he received a concurrent six-month prison sentence. He does not challenge his conviction or sentence for this offense.

impose a sentence below a statutory mandatory minimum. *See* Okla. Stat. tit. 22, § 985.1(A). The district court, however, concluded that it could not apply Oklahoma's safety-valve law because that provision conflicts with federal sentencing provisions that permit federal courts to depart from statutory mandatory minimums only in two limited circumstances, neither of which exists here. *See* 18 U.S.C. § 3553(e)–(f). Given this conflict, the district court sentenced Polk to the four-year mandatory minimum prison term.

## Analysis

Polk appeals his sentence, arguing that the district court erred in declining to apply Oklahoma's safety-valve law to consider whether he qualified for a departure below the four-year mandatory minimum. That argument hinges on whether the district court properly interpreted the ACA, the relevant federal sentencing provisions, and Oklahoma's safety-valve law. We review those legal determinations de novo. *See United States v. Chapman*, 839 F.3d 1232, 1241 (10th Cir. 2016).

As relevant here, the ACA provides federal jurisdiction over certain criminal acts committed on Indian reservations.[2] *United States v. Garcia*, 893 F.2d 250, 253

---

[2] By its terms, the ACA applies only to crimes committed on federal enclaves—"areas where states have ceded jurisdiction over land within their borders to Congress, such as military bases, federal facilities, and national parks and forests." *United States v. Harris*, 10 F.4th 1005, 1010 (10th Cir. 2021). It applies to crimes on Indian reservations by way of 18 U.S.C. § 1152, which extends federal-enclave law to Indian country, *see United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011) (explaining that "in conjunction," ACA and § 1152 "(1) assimilate state criminal law into federal law" for acts committed on federal enclaves and "(2) apply these assimilated state crimes to acts committed in Indian country").

(10th Cir. 1989). When such acts occur, they are often prohibited by specific federal criminal statutes. For instance, the Major Crimes Act, 18 U.S.C. § 1153(a), proscribes a list of severe offenses, such as murder and kidnapping, that are federal crimes when committed by Indians in Indian country. But sometimes, as is the case here, no particular federal statute covers the defendant's conduct, meaning it would not otherwise be a federal crime. *United States v. Jones*, 921 F.3d 932, 935 (10th Cir. 2019). In that event, the ACA steps in and generates a federal offense using the laws of the state in which the relevant reservation is located. *See id.* More precisely, it allows federal courts to "borrow [the relevant crime] from preexisting state law," thereby creating an applicable federal offense to fill the gap in the U.S. Code. *United States v. Christie*, 717 F.3d 1156, 1170 (10th Cir. 2013); *cf. also United States v. Martinez*, 1 F.4th 788, 790 (10th Cir. 2021) (explaining that "[t]he assimilated state offense becomes a federal offense punishable under federal law"), *cert. denied*, 142 S. Ct. 1373 (2022).

Notably, however, the ACA does not require federal courts to incorporate *every* aspect of state criminal law that may apply to the newly created offense. *See Christie*, 717 F.3d at 1171–72. To the contrary, it requires only that they ensure the defendant receives a "like punishment," § 13(a)—one similar to the punishment he or she would receive in state court. *See Christie*, 717 F.3d at 1171–72 (emphasizing that "the ACA requires *like* punishment, not *precisely the same* punishment"). Typically, this like-punishment standard means that we must apply "any maximum and minimum prison terms pr[e]scribed by state law for an assimilated crime." *Id.* at

4

1171. But in imposing a sentence between those mandatory values, federal courts need not "duplicate every last nuance of the sentence that would be imposed in state court." *Id.* at 1172 (quoting *Garcia*, 893 F.2d at 254). And critically, "federal courts *must* depart from state [sentencing laws] when Congress has expressed a specific and contrary penal policy." *Id.*; *see also United States v. Wood*, 386 F.3d 961, 963 (10th Cir. 2004) ("[W]hen sentencing defendants for assimilated crimes, federal courts have consistently declined to assimilate state sentencing laws if such laws conflict with the [United States Sentencing] Guidelines and their underlying policies.").

Applying this principle, the district court concluded that it could not sentence Polk under the Oklahoma safety-valve law because that law conflicts with federal sentencing policy, in particular 18 U.S.C. § 3553(e) and (f). Polk disputes this conclusion, arguing that no such conflict exists and that the district court therefore should have incorporated Oklahoma's safety-valve law and considered imposing a prison term of less than four years.

But Polk does not meaningfully grapple with the district court's reasons for finding a conflict. As the district court explained, under § 3553, federal sentencing judges may "depart from a mandatory minimum sentence only in [two] enumerated, limited circumstances," neither of which applies here.[3] App. vol. 1, 41; *see also United States v. C.D.*, 848 F.3d 1286, 1292 & n.5 (10th Cir. 2017) (noting that

---

[3] As the district court also noted, the Guidelines similarly permit such departures only in the two circumstances outlined in § 3553(e) and (f). *See* U.S.S.G. §§ 5C1.2, 5K1.1.

§ 3553 contains the "*only two* congressionally-authorized exceptions to a mandatory minimum sentence" (emphasis added)). Specifically, they may do so only when the defendant (1) provides substantial assistance to a criminal investigation or prosecution, or (2) is convicted of certain listed drug offenses and satisfies five statutory factors. § 3553(e)–(f). Oklahoma's safety-valve law, on the other hand, allows departures from mandatory minimums under a broader set of circumstances. *See* Okla. Stat. tit. 22, § 985.1(A) (permitting departure for certain qualifying offenses when mandatory minimum "is not necessary for the protection of the public," "would result in substantial injustice to the defendant," or "is not necessary for the protection of the public and the defendant . . . has been accepted" to alternative court, diversion program, or community sentencing). Thus, as the district court concluded, Oklahoma's safety-valve law conflicts with federal sentencing policy because it would allow a prison term below the mandatory minimum in circumstances other than those exclusively provided for in § 3553(e) and (f).[4]

Polk's contrary argument does not undermine this straightforward textual conclusion. He suggests that the district court erred by basing its conclusion that a conflict exists on a determination that the federal safety-valve provision, § 3553(f),

---

[4] This direct tension between what state law permits and what federal law forbids answers Polk's assertion, drawn from an analogy to the conflict-preemption doctrine, that two laws do not conflict if they merely "overlap" and that a conflict instead requires that it be "[im]possible to comply with both" laws. Rep. Br. 6 (quoting *Kansas v. Garcia*, 140 S. Ct. 791, 806 (2020)). This impossibility standard plainly is met here: Both provisions cannot be given effect because, as mentioned above, Oklahoma's safety-valve law allows departures for reasons that would not support a departure under § 3553(e) and (f).

"never references" the ACA specifically. Aplt. Br. 25–26. From that premise, Polk

then argues that no language in § 3553(f) shows that Congress intended "to exclude

[the ACA] from [federal] safety[-]valve consideration." Rep. Br. 3. But this argument

both misunderstands and fails to refute the district court's conflict analysis. As

explained, the district court did not base its conclusion that Oklahoma's safety-valve

law conflicts with § 3553 on Congress's failure to mention the ACA in subsection (f)

(or subsection (e), for that matter).[5] Instead, it based that conclusion on the fact that

Oklahoma's safety-valve law would allow departures below the mandatory minimum

in circumstances beyond those provided for in § 3553(e) and (f). Nothing about

Polk's § 3553(f) argument disputes this unambiguous conflict, and this conflict is

fatal to Polk's sentencing challenge.[6] *See Christie*, 717 F.3d at 1172.

## Conclusion

In sum, because Oklahoma's safety-valve law conflicts with federal sentencing

---

[5] To the extent that this failure to mention the ACA in the federal safety-valve provision has any significance, it suggests that Congress *did* intend to exclude ACA offenses because § 3553(f) specifies that it applies only "in the case of" certain enumerated drug offenses. *See Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) ("[T]he enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced" (quoting *Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003))).

[6] Because the relevant statutory language is unambiguous, we do not address Polk's arguments about legislative history, statutory purpose, and the rule of lenity supporting his position. *See In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002) (noting that courts must interpret an unambiguous statute "according to its plain meaning," considering legislative history and statutory purpose only "[i]f a statute is ambiguous"); *United States v. Black*, 773 F.3d 1113, 1117 (10th Cir. 2014) (requiring showing of "grievous ambiguity or uncertainty in the statute" to apply rule of lenity (quoting *Dean v. United States*, 556 U.S. 568, 577 (2009))).

policy—specifically, § 3553(e) and (f)—the district court did not err in declining to apply that state law when sentencing Polk. Instead, the district court properly incorporated only the state-law mandatory minimum applicable to Polk's crime, thereby providing him with the "like punishment" the ACA requires. § 13(a). Thus, we affirm Polk's sentence.